196 P.3d 831

**Jose SEGURA and Francisco Medrano Tovar, Petitioners,**

v.

**The Honorable David O. CUNANAN, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**The State of Arizona ex rel. Andrew Thomas, the Maricopa County Attorney, Real Party in Interest.**

Nos. 1 CA–SA 07–0179, 1 CA–SA 07–0181.

Court of Appeals of Arizona, Division 1, Department E.

April 24, 2008.

Review Denied Oct. 28, 2008.

---

Maricopa County Public Defender, Mikel Steinfeld, Deputy Public Defender, Phoenix, Attorneys for Petitioner Tovar.

Maricopa County Public Defender, Daniel B. Mestaz, Deputy Public Defender, Phoenix, Attorneys for Petitioner Segura.

Andrew P. Thomas, Maricopa County Attorney, David E. Wood, Deputy County Attorney, Phoenix, Attorneys for Real Party in Interest.

IRVINE, Presiding Judge.

¶1 Francisco Medrano Tovar and Jose Segura separately petition this court to accept jurisdiction of their special actions and to grant the relief requested. Each claims that he was deprived of his liberty without due process because he was held in custody without the benefit of an evidentiary hearing at which he could fully litigate whether the Arizona Constitution's no-bail provision applies to him. We accepted jurisdiction and granted substantial relief in earlier orders. We hold in this Opinion that if the State alleges that a defendant is not entitled to bail under the Arizona Constitution, due process requires that the defendant receive a full hearing at which the defendant may be represented by counsel, cross-examine witnesses, and present evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

### Tovar

¶2 On July 9, 2007, Tovar was arrested on two counts of misconduct involving weapons, both class 4 felonies, and one count of possession of narcotic drugs, also a class 4 felony. That same day, Tovar's initial appearance was held. It is not entirely clear in the record before us, but it appears that the magistrate had a copy of the Release Questionnaire (Form 4), a Financial Information form signed by Tovar, and an Immigration Detainer—Notice of Action from the Immigration and Naturalization Service. The Release Questionnaire contained the following Probable Cause Statement, apparently authored by the arresting officer:

On 070907 at approximately 1445 hours, the def was contacted as a suspicious person in an alley around 29th Ave and Melvin Street. Upon contact, the def was the only occupant of the vehicle and jumped in the drivers seat as I pulled into the alley. The def stepped out of the truck at my request and I noticed the baggie of cocaine in plain view on the center consol of the truck. After the def was placed under arrest, a pistol was found under ther [sic] def floor mat of the drivers seat. Def was the only occupant of veh. Drugs tested positive.

¶3 Tovar's initial appearance proceeded quickly. According to the transcript, the entire hearing, excluding references to the interpreter, was as follows:

Judge Barth ("JB"): Francisco Medrano Tovar. Is your name Francisco Medrano Tovar?

Tovar: No, uh, the name is Francisco Tovar Medrano.

JB: And is your date of birth, sir, uh, [...]?

Tovar: Yes.

JB: Sir, you've been charged with possessionable [sic] weapon by a prohibited person, a class 4 felony, [p]ossession of use of a narcotic drug, a class 4 felony, [c]arrying—and carrying a concealed weapon without a permit, a misdemeanor. I find the proof evident presumption great that you committed a class 4—one or more of the class 4 felonies of which you've been charged. That there is probable cause that you're in the United States illegally. Therefore under the law of Arizona you're not eligible for release. I have a county attorney to represent you. Step to the right [and the] clerk will give you paperwork with the date, time and location of your next hearing."

¶ 4 There is nothing in the record showing that Tovar received a copy of the Form 4 prior to the hearing or was informed of its contents at the hearing. No witnesses were called by either party nor was Tovar asked if he wished to speak. Tovar was not represented by counsel.

¶ 5 One week later, after counsel was appointed, Tovar requested a bail hearing pursuant to *Simpson v. Owens,* 207 Ariz. 261, 85 P.3d 478 (App.2004). A *Simpson* hearing was set for seven days later, on July 23, 2007. A few days before the scheduled hearing, the State filed a response in which it argued that Tovar had received his bail hearing at his initial appearance and his demand for a new hearing failed to list any additional evidence as required by Arizona Rule of Criminal Procedure 7.4(b). Separately, the State also informed the court that Tovar had been indicted by a grand jury and requested a continuance of the hearing. The court granted the continuance, referred Tovar's demand for a *Simpson* hearing to the presiding criminal judge, and then vacated its own order granting the hearing. After the hearing was vacated, Tovar filed a Motion to Modify Release Conditions, arguing that he should be released because the failure to hold an evidentiary hearing violated the seven day requirement of Arizona Rule of Criminal Procedure 7.4(b) and *Simpson* itself. This motion was then heard by Commissioner Cunanan on July 26, 2007.

¶ 6 Commissioner Cunanan rejected Tovar's seven-day argument. The State then essentially argued that Tovar had already had the only bail hearing he was entitled to at the initial appearance and to have another bail hearing he must allege new facts. The court appears to have agreed with the State's position and so treated the issue before it as an ordinary motion to modify release conditions rather than a *Simpson* hearing, at which the State would have the burden of proof. The court concluded that "under the rules that we have before us, in essence, I am not going to revisit the decision of the IA [Initial Appearance] Commissioner unless new facts, circumstances or arguments are brought to me that somehow change or would change the position that they took in findings that they had made."

## *Segura*

¶ 7 On or about July 12, 2007, Segura was arrested for allegedly possessing a forged Mexican Voter Registration card. At an initial appearance held the next day, Segura did not have counsel and was not provided with the opportunity to cross-examine witnesses or present evidence. It is not entirely clear from the record, but it seems the IA commissioner had before him a copy of Segura's Release Questionnaire (Form 4) and a Financial Information form signed by Segura.

¶ 8 The Release Questionnaire contained the following Probable Cause Statement, apparently authored by the arresting officer:

On 07–12–07 AP Jose Hernandez Segura was stopped for traffic violations at 702 W Broadway Rd. He presented a forged Mexico voters card for identification. This voters card was identified by Det. M.N[.] ... and Det. J[.] ... as being forged. AP Segura stated, he got this ID from Mexico. This type of ID that was presented by AP Segura was not the type of ID issued by the Mexican government.

This forged voters card was made with unofficial materials not used by Mexico. The safety features of overlapping was not present on the picture, the face on the card was blurry and difficult to read, the front side and back side papers had holes on them that did not match. The print on the card was blurry and not bold as required by this card. This card was impounded for evidence.

The initial appearance commissioner held Segura non-bondable.

¶ 9 Shortly after the State filed a complaint charging Segura with the class 4 felony of forgery under Arizona Revised Statutes ("A.R.S.") section 13–2002(A)(3) (2001), Segura, through counsel, filed a Motion Demanding Hearing on Reexamination of Release Conditions. The presiding criminal judge granted the motion and scheduled a hearing before Commissioner Cunanan.

¶ 10 At the hearing, Segura argued that it was the State's burden to present evidence

that the proof is evident or the presumption great that he committed a forgery and that there was probable cause to find that he was in the country illegally. The State responded, in essence, that if Segura produced no new evidence, he was not entitled to any hearing after the initial appearance.

¶ 11 Segura also argued that a photocopy of a validly-issued voter's registration card is not a forgery and there was no evidence that Segura was not registered to vote in Mexico or had tried to defraud anyone. Commissioner Cunanan denied the motion, finding no new evidence had been presented that would warrant a re-examination of the release conditions or that reflected that the determination made at the initial appearance was incorrect.

¶ 12 Segura was able to make a record regarding some of his arguments by questioning an employee of the Sheriff's office who testified he did not know if the arresting officer had ever received training from any Mexican entity as to identifying forged voter registration cards. The employee testified that the arresting officer had said Segura's card had been photocopied and laminated. The employee also testified that the arresting officer told him that Segura's card was made of materials not used by Mexico, that the card was blurry, that an overlapping safety feature was not present, and that holes on the front side did not match with holes on the back side. It appears to be undisputed that the name on the card was Segura's actual name.

### Special Action Proceedings

¶ 13 In these special actions, Tovar and Segura phrase their issues slightly differently, but in essence each argues that he was denied his right to due process (1) by the initial appearance magistrate holding him non-bondable when he had no counsel, was unable to confront or cross-examine witnesses, or present evidence and (2) by the ruling that a later determination regarding bail would be made only if he was able to allege the existence of material new facts.[1] After hearing oral arguments, we issued an Order in each case accepting jurisdiction and ordering a hearing de novo to determine whether the State can demonstrate that Article 2, Section 22(A)(4) previously upheld the Arizona Constitution's no bail provision if procedural safeguards are provided, citing *Simpson*. Additionally, the Orders explained, we previously rejected the argument that a determination of whether an accused is entitled to bail should be given preclusive effect when the issue was not "fully litigated" in the earlier proceeding, citing *State ex rel. Romley v. Superior Court*, 185 Ariz. 160, 163, 913 P.2d 500, 503 (App.1996). Because Tovar's and Segura's initial appearances were sufficient only to hold them until their eligibility for bail could be "fully litigated" and because the initial determinations were not entitled to preclusive effect, Tovar and Segura were entitled to de novo hearings.

¶ 14 The Orders indicated that formal written decisions would follow. Because the issues are essentially the same in both cases, we address them in this consolidated decision.

### JURISDICTION

¶ 15 Our decision to accept special action jurisdiction is largely discretionary. *State v. Superior Court (Martinez)*, 186 Ariz. 218, 219, 920 P.2d 784, 785 (App.1996). This case presents issues regarding the implementation of Proposition 100, enacted by the voters of Arizona in November, 2006. This court recently examined the constitutionality of Proposition 100 in *Hernandez*, in which we held that Proposition 100 applied only to illegal aliens currently remaining illegally in the United States and concluded that Propo-

---

1. Tovar also argues that the seven-day time limit of Rule 7.4(b) was violated. In the exercise of our discretion, we decline to address this issue.

   Segura also argues that the evidence at the hearing did not satisfy the State's burden of proof and that the constitutional provision providing for no bail violates both the Due Process and Equal Protection Clauses of the United States and Arizona Constitutions. As explained below, any issue regarding the specific evidence is now moot, so we decline to address whether the State met its burden. We have also addressed the constitutionality of the applicable provisions in *Hernandez v. Lynch*, 216 Ariz. 469, 167 P.3d 1264 (App.2007), so we decline to address them in this case.

sition 100 complies with the constitutional standards of substantive due process and equal protection. 216 Ariz. at 480, ¶ 43, 167 P.3d at 1275.

¶ 16 We accepted jurisdiction of the *Hernandez* special action because it presented an "issue that will be presented again; an issue of public notability; an issue of statewide significance; [and] an issue unresolved by the appellate court." *Id.* at 471, ¶ 6, 167 P.3d at 1266 (citing *Simpson,* 207 Ariz. at 265–66, ¶ 13, 85 P.3d at 482–83). The same considerations apply here. Moreover, in these cases the issues raised have even broader application. Although these cases arise in the context of Proposition 100, the State's arguments regarding the procedures for holding a defendant without bail apply equally to any defendant accused of a crime that may be included within the Arizona Constitution's no-bail provision, whether that person is a citizen, legal resident, or illegal alien. Therefore, we conclude that it is appropriate for us to exercise special action jurisdiction.

¶ 17 The parties have informed us that both Tovar and Segura pled guilty (in Segura's case, to a lesser charge) and were sentenced before any hearing was held pursuant to our Orders. Therefore, the issues before us may be moot as to Tovar and Segura. Nevertheless, we accept jurisdiction because whether the procedures followed by the superior court to implement the no-bail provisions of our constitution satisfy due process remains a disputed issue and is likely to recur. *See David G. v. Pollard ex rel. County of Pima,* 207 Ariz. 308, 309, ¶ 6, 86 P.3d 364, 365 (2004).

## LEGAL BACKGROUND

¶ 18 This case requires us to address the application of the requirements of due process to Arizona's procedures relating to arrest and release of defendants who may not be entitled to bail. Therefore, we begin with a general (and simplified) review of the laws and rules that govern these procedures.

2. For a thorough discussion of the history of bail, see *Simpson,* 207 Ariz. at 266–69, ¶¶ 14–22, 85

¶ 19 In Arizona, a person arrested must be taken before a magistrate for an initial appearance within 24 hours or be immediately released. Ariz.R.Crim.P. 4.1(a). If the person is arrested without a warrant, a complaint must be filed within 48 hours of the initial appearance. Ariz.R.Crim.P. 4.1(b). At the person's initial appearance the magistrate must do certain prescribed things, including: ascertaining the defendant's true name and address, informing the defendant of the charges, informing the defendant of the right to counsel and the right to remain silent, determining whether probable cause exists for the purpose of release from custody, appointing counsel if the defendant is eligible, and determining the release conditions, if any. Ariz.R.Crim.P. 4. 2(a). *See also State v. Van Dyke,* 127 Ariz. 335, 338, 621 P.2d 22, 25 (1980) ("Essentially the initial appearance is designed to inform the defendant of why he has been arrested, when he must next appear, and to release him if possible.").

¶ 20 The magistrate at the initial appearance makes the initial determination concerning conditions of release.[2] Ariz.R.Crim.P. 7.4(a). Prior to 2007, Arizona Rule of Criminal Procedure 7.2(a) simply provided:

> **Before Conviction.** Any person charged with an offense bailable as a matter of right shall be released pending or during trial on the person's own recognizance, unless the court determines, in its discretion, that such release will not reasonably assure the person's appearance as required. If such a determination is made, the court may impose the least onerous condition or conditions contained in Rule 7.3(b) which will reasonably assure the person's appearance.

The rules allowed for a subsequent review of release conditions by motion "whenever the person's case is transferred to a different court or the motion alleges the existence of material facts not previously presented to the court." Ariz.R.Crim.P. 7.4(b). Before 2007, neither Rule 4.2 nor Rule 7.4 specifically

P.3d at 483–86.

referred to defendants who are not entitled to bail.

■ ¶ 21 Following the initial appearance, if a complaint is filed charging the defendant with a felony, a preliminary hearing shall commence not later than 10 days after the initial appearance if the defendant is in custody, unless the defendant waives the hearing. Ariz.R.Crim.P. 5.1(a). The purpose of a preliminary hearing is to determine whether the prosecution's case establishes probable cause. The defendant has the right to cross-examine the witnesses and to review the witnesses' previous written statements, and may also offer evidence. Ariz.R.Crim.P. 5.3(a). "The finding of probable cause shall be based on substantial evidence, which may be hearsay in whole or in part . . . ." Ariz.R.Crim.P. 5.4(c). If probable cause is not found at the preliminary hearing, "the magistrate shall dismiss the complaint and discharge the defendant." Ariz.R.Crim.P. 5.4(d). If probable cause is found, or if the defendant waives a preliminary hearing, the prosecutor will file an information containing a statement of the facts of the offense and citations of the statutes or other provisions of law that the defendant is alleged to have violated. Ariz.R.Crim.P. 13.1(c), 13.2(a), (b).

■ ¶ 22 As an alternative to a preliminary hearing, the prosecution may establish probable cause by obtaining an indictment from a grand jury. *See State v. Gomez,* 212 Ariz. 55, 59–60, ¶ 25, 127 P.3d 873, 877–78 (2006) ("Arizona law allows a prosecuting attorney to proceed with felony charges by way of an indictment, which reflects a grand jury's determination that probable cause exists to believe the defendant has committed the charged offense, or by information."). A supervening indictment eliminates a defendant's right to a preliminary hearing on a prior complaint. *State v. Vierra,* 163 Ariz. 4, 5 n. 1, 785 P.2d 573, 574 n. 1 (App.1989); *see also* Ariz.R.Crim.P. 12.7(c) (notice of supervening indictment shall be sent if defendant previously had an initial appearance under Rule 4.2).

■ ¶ 23 Whether charged by indictment or information, the determination of probable cause made at the initial appearance is insufficient to hold the defendant indefinitely, but is made for the limited purpose of holding the accused until the issue of probable cause can be more fully determined by either a grand jury or a magistrate at a preliminary hearing (unless waived). *See also* Ariz. Const. art. 2, § 30 ("No person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment; no person shall be prosecuted for felony by information without having had a preliminary examination before a magistrate or having waived such preliminary examination."). The rules also provide procedural protections for a defendant in a preliminary hearing or grand jury proceeding that are not applicable to an initial appearance. The Rules of Criminal Procedure expressly require verbatim recordings of a preliminary hearing and the proceedings before a grand jury, Ariz.R.Crim.P. 5.2, 12.8(a), (c), and the findings in either proceeding may be challenged with an allegation that the defendant was denied a substantial procedural right. Ariz.R.Crim.P. 5.5, 12.9.

¶ 24 Not all defendants are entitled to bail. Since statehood, the Arizona Constitution has provided that all offenses are bailable, "except for capital offenses when the proof is evident or the presumption great." Ariz. Const. art. 2, § 22 (as quoted in *Wiley v. State,* 18 Ariz. 239, 158 P. 135 (1916)). Over the years, the list of nonbailable offenses was expanded, and by 2006 included capital offenses, sexual assault, certain crimes against children, offenses committed when the person charged is on bail on a separate felony charge, and felony offenses if the person charged poses a substantial danger to any other person. Ariz. Const. art. 2, § 22. In each case, the standard of proof was that the proof is evident or the presumption great as to the charge. *Id.; see also* A.R.S. § 13–3961 (Supp.2007) (statutory provision supplementing constitution).

¶ 25 Because of uncertainty concerning how to implement the no-bail provisions of the constitution, we were asked to "clarify the means of execution" in *Simpson.* 207 Ariz. at 263–64, ¶ 2, 85 P.3d at 480–81. *Simpson* relied heavily on *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), which addressed a due

process challenge to the federal Bail Reform Act. In upholding the federal law, the United States Supreme Court noted that the statute provided a defendant with a number of procedural protections, including: "(1) the right to counsel; (2) the opportunity to testify and present information; (3) the opportunity to cross-examine opposing witnesses; (4) the statutory factors governing the preventative-detention decision-making process; (5) a requirement of findings of fact and a statement of reasons for the decision; and (6) a requirement of proof by clear and convincing evidence." *Simpson*, 207 Ariz. at 274, ¶ 41, 85 P.3d at 491 (citing *Salerno*, 481 U.S. at 751–52, 107 S.Ct. 2095). Citing cases from across the country that have addressed similar issues, *Simpson* found "persuasive the reasoning of those courts that view at least most of the procedural protections enunciated in *Salerno* as necessary for the Arizona law to comply with procedural due process." *Id.* at 275, ¶ 41, 85 P.3d at 492.

¶ 26 For purposes of this case, *Simpson* made several significant holdings. First, to afford an accused due process regarding a no-bail determination, a defendant "must be provided a hearing during which he must be given 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* at 270, ¶ 27, 85 P.3d at 487 (quoting *Huck v. Haralambie*, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979) (internal citation omitted)).

¶ 27 Second, the "burden of proving an exception to bail lies with the State." *Id.* This burden arises because "the State is in a position superior to that of the accused to produce evidence during a hearing because it already will have presented evidence in the process of charging the person." *Id.* Consequently, the "State has the burden to demonstrate that the proof is evident or the presumption great that the accused committed the offense at issue." *Id.* at 276, ¶ 47, 85 P.3d at 493.

¶ 28 Third, the accused is entitled to counsel and "must have the right to examine/cross-examine the witnesses and to review in advance those witnesses' prior statements that are written." *Id.* at 275–76, ¶ 44, 85 P.3d at 492–93.

¶ 29 Fourth, a hearing regarding whether the proof is evident or the presumption great is inherently similar to a preliminary hearing, so hearsay is admissible, but the charging document cannot be used to meet the State's burden. *Id.* at ¶¶ 44, 48.

¶ 30 Fifth, although release conditions are first addressed by a magistrate at the initial appearance, it "would be a rare occasion when an adequate bail hearing could be conducted at the initial appearance" for a non-bailable offense. *Id.* at 278, ¶ 54, 85 P.3d at 495. "Although a person charged with these offenses may be granted bail if the State cannot successfully satisfy its burden of proof, it is not feasible for the bail hearing to take place at the time of the initial hearing if for no other reason than that the accused 'must be given adequate notice to prepare for the hearing.'" *Id.* (quoting *State v. Kastanis*, 848 P.2d 673, 676 (Utah 1993)). Therefore, an accused may be held in custody pending a bail hearing, but "the hearing should take place as soon as is practicable to ensure that the accused is afforded due process and to maintain the presumption of innocence." *Id.* at ¶ 55.

¶ 31 Thus, *Simpson* allowed a defendant to be held after an initial appearance based on an initial determination that bail was not allowed. If, however, an accused chose to challenge that decision, a conclusive determination that a defendant was not bailable could only be made after a hearing. Such a hearing would include the rights detailed in *Simpson*, especially the right to counsel and the right to cross-examine witnesses and offer evidence.

¶ 32 In late 2006, the scope of the no-bail provision of the Arizona Constitution was again expanded. Proposition 100 amended the Arizona Constitution to allow criminal defendants charged with serious offenses to be held without bail if they are in the country illegally. Article 2, Section 22, now states in pertinent part:

A.  All persons charged with crime shall be bailable by sufficient sureties, except:

. . . .

4.  For serious felony offenses as prescribed by the legislature if the person charged has entered or remained in the United States illegally and if the proof is evident or the presumption great as to the present charge.

Taking effect as a conditional enactment with the constitutional amendment was A.R.S. § 13–3961(A)(5)(b), which defined "serious felony offense" for bail purposes as any class 1, 2, 3 or 4 felony or any violation of A.R.S. § 28–1383 (driving under the influence).

¶ 33 Before Proposition 100, the prosecution possessed most facts necessary to determine bail status before the charges were filed, including the nature of the offense and whether the accused was already on bail, and the standard of proof was the same for all allegations, i.e., the proof is evident or the presumption great. Consequently, *Simpson* hearings were relatively straight-forward for the State to conduct.

¶ 34 After Proposition 100, however, the no-bail determination became more complicated. Whether the accused was in the country illegally was often a fact not readily available to the State, and the standard of proof under the constitution regarding a defendant's immigration status was subject to differing interpretations. And, the expanded list of offenses that would trigger a no-bail determination led to an increase in the number of cases at which bail could be disputed.

¶ 35 To provide some clarity, on April 3, 2007, the Chief Justice of the Arizona Supreme Court issued Administrative Order 2007–30 ("Administrative Order"), which stated:

Since the effective date of the amendments, questions have arisen concerning the procedures to be followed in making a determination whether bail should be allowed, the standard of proof applicable to evidence offered to show that the person has entered or remained in the United States illegally, and the roles of the various participants during the Initial Appearance (IA) hearing and subsequent proceedings. The following requirements are designed to ensure decisions involving denial of bail for persons in custody are made in a uniform way and consistent with state and federal law.

www.supreme.state.az.us/orders/admorder/ Orders07/2007–30.pdf (as visited Apr. 21, 2008).

¶ 36 The Administrative Order required the initial appearance magistrate to determine whether probable cause exists to believe the defendant committed the charged offense. If so, and the offense was a serious offense under A.R.S. § 13–3961(A)(5), the magistrate would then determine if probable cause existed to believe that the defendant entered or remained in the United States illegally and the proof is evident or the presumption great that the defendant committed the charged serious offense. If the magistrate made these findings, the court would order an evidentiary hearing as to whether the proof is evident or the presumption great as to both whether the defendant committed the charged offense and entered or remained in the United States illegally. Such a hearing was to be scheduled within twenty-four hours. The State could obtain a twenty-four hour continuance, while the defendant could request up to five calendar days. The Order also revised Form 4 to include information concerning whether the offense charged was non-bailable and whether the defendant had entered or remained in the United States illegally.

¶ 37 As a follow-up to the Administrative Order, on May 25, 2007, the Director of the Administrative Office of the Courts filed proposed amendments to Arizona Rules of Criminal Procedure 4.2, 7.2, 7.4, 27.7, and 31.6 ("Proposed Rules"). Supreme Court No. R–07–0003. Consistent with the provisions of the Administrative Order, the Proposed Rules would require that the standard of proof for both the offense and illegal status was that the proof is evident or the presumption great. Instead of strict time limits for holding bail hearings, however, the Proposed Rules would amend Rule 4.2 to make it clear that the no-bail determination would be made at the initial appearance. The Proposed Rules also proposed a revision to Rule 7.4(b) to permit "any party" to request a hearing to reexamine the conditions of release, with the hearing to be held as soon as practicable, but

no later than seven days after filing the motion. The May 25, 2007, Petition filed with the Proposed Rules explained that "[s]even days appears necessary to allow for preparation by the parties, notice to the victim and transport of the defendant, if required."

¶ 38 As the Petition recognized, however, the Legislature was already considering legislation to amend A.R.S. § 13–3961 to clarify the standard of proof and address other issues concerning Proposition 100. These efforts led to the enactment of Senate Bill 1265 on June 18, 2007, with the Governor signing the bill into law on July 2, 2007. *See* S.B. 1265, 48th Leg., 2nd Reg. Sess. (Ariz.2007); 2007 Ariz. Sess. Laws, ch. 289. S.B. 1265 specifies that the standard to determine if a person has entered or remained in the United States illegally is whether "there is probable cause to believe" so. S.B. 1265 also provided that "[t]he initial determination of whether an offense is bailable pursuant to subsection A of this section shall be made by the magistrate or judicial officer at the time of the person's initial appearance." A.R.S. § 13–3961(C), as amended by S.B. 1265. S.B. 1265 further detailed what evidence should be considered in determining a person's legal status.

¶ 39 The Chief Justice immediately responded to the amendment by rescinding the Administrative Order and adopting on an emergency basis amendments to the Arizona Rules of Criminal Procedure 4.2, 7.2 and 7.4 ("Emergency Rules"). Order in Supreme Court No. R–07–0003, effective July 3, 2007, www.supreme.state.az.us/rules/ramd—pdf/r–07–00037.3.07.pdf (as visited Apr. 21, 2008). The Emergency Rules were plainly based on the Proposed Rules, with adjustments for S.B. 1265's change to the probable cause standard for determining immigration status. Consistent with S.B. 1265 and the earlier proposal, Rule 4.2(a)(7) in the Emergency Rules stated that the magistrate's determination of release conditions at the initial appearance shall include whether the defendant is non-bailable under the Constitution. The Emergency Rules added a new subsection (b) to Arizona Rule of Criminal Procedure 7.2, stating that

[a] person shall not be released on bail if the court finds the person is not bailable pursuant to A.R.S. Const. Art. 2, § 22 and A.R.S. § 13–3961. If the allegation involves A.R.S. § 13–3961(A)(5), the person shall not be considered bailable if the court finds (1) that the proof is evident or the presumption great that the person committed a serious offense, and (2) probable cause that the person entered or remained in the United States illegally.

Rule 7.4 was also amended to read essentially as in the Proposed Rules, providing that a motion involving whether a defendant shall be held without bail "shall be held on the record as soon as practicable but not later than seven days after the filing of the motion."

## DISCUSSION

■ ¶ 40 Tovar was arrested six days after the Emergency Rules were adopted. Segura was arrested a few days later. Tovar and Segura argue that they were denied due process because they were denied bail without having a meaningful opportunity to be heard on the no-bail allegation. They argue that the bail determination made at their initial appearances cannot be given conclusive effect because they were without counsel and were unable to confront or cross-examine witnesses or present evidence. They also argue that the trial court inappropriately shifted the burden of proof regarding whether "the proof is evident or presumption great" by requiring them to show a change of circumstances after the initial appearance to be eligible to receive a *Simpson*-like evidentiary hearing.

¶ 41 The State responds that Tovar and Segura were given adequate due process and did not qualify for new hearings because they did not present new evidence to overcome the rulings made at their initial appearances. The State also argues that the Arizona Supreme Court overruled *Simpson* by virtue of the Emergency Rules, which require a magistrate to determine whether a defendant is bailable at the initial appearance.

¶ 42 Additionally, the State argues that under the Emergency Rules it met its burden of proof at Tovar's and Segura's initial

appearances. By meeting that burden, the State argues, the determinations at the initial appearances created rebuttable presumptions that neither Tovar nor Segura overcame in order to qualify for a new hearing.

¶ 43 As a threshold matter, the State argues that this court lacks jurisdiction to review actions involving the interpretation of Supreme Court rules. We reject this argument. "[T]he Arizona Court of Appeals has the power to determine the validity and constitutionality of the rules promulgated by the Arizona Supreme Court in connection with a case before" it. *State v. Meek*, 9 Ariz.App. 149, 151, 450 P.2d 115, 117 (1969). The Supreme Court has expressly held that its rules are not immune from constitutional challenge because the process of adopting a rule does not constitute a judicial ruling on its validity. *See Scheehle v. The Supreme Court*, 211 Ariz. 282, 298, 120 P.3d 1092, 1108 (2005) ("Our adoption of a rule does not constitute a prior determination that the rule is valid and constitutional against any challenge.... Such a determination awaits a judicial proceeding in which opposing interests are provided a full opportunity to be heard."). Moreover, a rule "cannot circumvent or supplant ... constitutional requirements." *Fragoso v. Fell*, 210 Ariz. 427, 431, ¶ 13, 111 P.3d 1027, 1031 (App.2005) (quoting *In re United States Currency of $315,900.00*, 183 Ariz. 208, 213, 902 P.2d 351, 356 (App. 1995)). Therefore, whether the rules at issue comport with due process is a question properly before us.

¶ 44 When the government deprives an individual of life, liberty, or property, it must do so in a "fair manner." *Salerno*, 481 U.S. at 746, 107 S.Ct. 2095. In *Salerno*, the United States Supreme Court balanced the need for a fair hearing against the interests of society of preventing harm by dangerous criminals. The Court determined that the requirements of procedural due process were met because the procedures required by the federal Bail Reform Act were "specifically designed to further the accuracy" of determining "future dangerousness." *Id.* at 751, 107 S.Ct. 2095. The act's procedural safeguards include the defendant's right to counsel at the hearing, the right to testify and

present witnesses and to proffer evidence. *Id.* The defendant also may cross examine other witnesses at the hearing. *Id.* Given these safeguards, the court held that "[w]hen the Government proves by clear and convincing evidence" that the defendant presents a threat to the community, he may be held without bail consistent with the Due Process clause. *Id. See also Demore v. Kim*, 538 U.S. 510, 531, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (holding that detention of a deportable alien during removal proceedings is constitutionally permissible); *id.* (Kennedy, J., concurring) (noting that "due process requires individualized procedures to ensure that there is at least some merit to the Immigration and Naturalization Service's (INS) charge").

¶ 45 In Arizona, the level of procedure required to hold defendants without bail pending trial was addressed in *Simpson*, where the no-bail determination was made without an adversarial hearing. This court held that "due process requires that a full and adversarial evidentiary hearing be conducted." 207 Ariz. at 265, ¶ 12, 85 P.3d at 482. Because there is a presumption in favor of bail unless the proof is evident or the presumption great the defendant committed a crime enumerated in § 13–3961(A), a hearing must be provided. *Id.* at 270, ¶¶ 26–27, 85 P.3d at 487. The hearing must provide the defendant with "an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quoting *Huck*, 122 Ariz. at 65, 593 P.2d at 288). *Simpson* noted that an adequate bail hearing could rarely be conducted at the initial appearance. *Id.* at 278, ¶ 54, 85 P.3d at 495.

¶ 46 The State does not argue that initial appearances are conducted any differently now than when we considered them in Simpson. Indeed, as the transcript of Tovar's initial appearance shows, the initial appearance provides no opportunity for a defendant to present evidence or make any argument regarding the law or evidence. Initial appearances serve the limited function of providing some check on the ability of the state to hold a defendant, but they continue to be ill-suited to support conclusive findings affecting a defendant's liberty. As discussed

above, under Arizona rules a probable cause determination made at an initial appearance can only justify holding a defendant until either a preliminary hearing or grand jury proceeding is convened. We see no reason to give the initial appearance determinations greater effect regarding a no-bail determination, especially in light of the high burden of proof placed on the State by the Arizona Constitution (proof evident, presumption great) to justify holding someone without bail.

¶ 47 The State argues, however, that the amended rules require the conclusive bail determination be made at the initial appearance and that due process is satisfied because a defendant may seek a bail redetermination pursuant to Rule 7.4(b) by presenting "material facts not previously presented to the court." If the defendant cannot allege new facts, the State contends that the bail determination at the initial appearance cannot be disturbed. We disagree.

¶ 48 As we read it, the provision of the Emergency Rules stating that the bail determination should be made at the initial appearance was intended to replace the requirement of the Administrative Order that a full hearing on bail must take place within twenty-four hours. This twenty-four hour requirement imposed significant burdens on the prosecution by requiring the State to meet a heavy burden of proof with little time to prepare. Perhaps recognizing that it was unrealistic to expect the State to fully litigate the question of bail so early in the process, the intent of the Emergency Rules appears to be to ease the time pressure on the State by allowing a defendant to be held pending a full hearing. As for when and how that hearing should take place, the rules simply

provide that "any party" may seek a reexamination of release conditions. This is a change from the previous language, which provided a hearing only to "any person remaining in custody." Whoever makes the request, any hearing would be held within seven days, which, as the Petition filing the Proposed Rules recognized, provides the time "necessary to allow for preparation by the parties, notice to the victim and transport of the defendant, if required."

¶ 49 We see nothing in the Emergency Rules to persuade us that they were intended not only to ease the prosecution's burden at the initial appearance, but reverse it and impose unrealistic burdens on the defendant. We also note that S.B. 1265 required only that the "initial" bail determination be made at the initial appearance, again with the apparent intent of ensuring that a defendant who probably was non-bailable would not be released before a conclusive determination could be made. *See* A.R.S. § 13–3961(C). Consistent with the amended statute, the intent of the Emergency Rules appears to have been to give both parties the opportunity to prepare for a hearing and to put in place procedures that would provide for hearings within a reasonable time, which is similar to what we found in *Simpson* would satisfy due process. *Simpson*, 207 Ariz. at 278, ¶ 55, 85 P.3d at 495 ("[t]he hearing should take place as soon as is practicable to ensure that the accused is afforded due process").[3]

¶ 50 The State argues, however, that the Supreme Court's intent to make the initial appearance bail determination conclusive is shown by the fact that a comment to the Proposed Rules filed by the Arizona Public Defender Association raised the same objec-

---

3. In a comment to the Proposed Rules, the County Attorney explained how *Simpson* hearings worked prior to Proposition 100:

   [P]rovisions for holding a person nonbondable are nothing new in Arizona. Prior to the passage of Proposition 100, Arizona law provided that bail should be denied to individuals accused of capital crimes and certain sex crimes, and in situations in which the defendant had been admitted to bail on another felony or is deemed a danger or flight risk. Ariz. Const., Art. II, § 22. We already have processes in place for dealing with questions of a defen-

dant's nonbondability. These processes have worked well and should be applied to the new cases added by Proposition 100. There is no reason for a radical departure from current rules and practices just because the interests of illegal immigrants are now implicated.

Maricopa County Attorney's Comments to the Petition to Amend Rules 4.2, 7.2, 7.4, 27.7, and 31.6, Rules of Criminal Procedure, 5 (June 14, 2007), http://www.dnnsupremecourt.state.az.us/Portals/0/NTForums Attach/1614165857858.pdf (as visited Apr. 21, 2008).

tion Tovar and Segura now raise to the Emergency Rules, namely that the rules only allow a hearing if material new facts are alleged. Because the comment was filed before the Emergency Rules were adopted, the State argues, the Supreme Court must have intended to reject the objection raised in the comment. We find this argument unpersuasive.

¶ 51 The Order adopting the Emergency Rules also ordered that the matter involving both the Proposed Rules and Emergency Rules would remain open for comment until August 10, 2007. The Supreme Court subsequently ordered that the Emergency Rules shall be continued in effect on an emergency basis and ordered that the matter be reopened for comment until May 20, 2008. Order dated September 5, 2007, www.supreme. state.az.us/rules/ramd_pdf/r–07–00039.6.07. pdf (as visited Apr. 21, 2008). There is no evidence in either of these orders that the Supreme Court considered any of the comments to the Proposed Rules in adopting the Emergency Rules, or that it regards the Emergency Rules as the definitive word on procedures relating to Proposition 100. Consequently, we do not read the Emergency Rules as prohibiting a post-initial appearance hearing to fully litigate the no-bail issue.

¶ 52 In any event, we reject the State's argument that due process is satisfied because a defendant may petition to reopen the bail determination made at the initial appearance by alleging new information. The determination at the initial appearance is only conclusive, and therefore entitled to preclusive effect, if the proceeding itself satisfies due process. We have previously rejected the argument that a determination regarding whether an accused is entitled to bail should be given preclusive effect if the issue was not "fully litigated" in the earlier proceeding. *State ex rel. Romley,* 185 Ariz. at 163, 913 P.2d at 503. *Simpson* identified what is

necessary to fully litigate a no-bail determination. The initial appearances in this case plainly failed to meet that standard.

¶ 53 The State argues, however, that *Simpson* was wrongly decided. Its argument is partially based on its claim that *Simpson* infringed on the Supreme Court's rulemaking authority by prescribing rules of procedure rather than simply applying due process to the existing rules.[4] In this case, we need not address every aspect of the *Simpson* decision because the only issue presented here is the right to a hearing to fully litigate the no-bail determination. To the extent *Simpson* holds that due process requires a hearing at which the defendant has the right to counsel and the right to cross-examine witnesses and offer evidence, we reaffirm its holding.

¶ 54 Moreover, even without *Simpson,* we would find that the proceedings in this case failed to satisfy due process. The competing interests at stake are a defendant's liberty and the government's need to ensure his presence for trial. *Hernandez,* 216 Ariz. at 477–80, ¶¶ 31–42, 167 P.3d at 1272–75. On balance, each of these interests is protected by allowing a defendant to be held after an initial appearance for a reasonable period of time while both parties are given the opportunity to prepare for a full hearing on the no-bail determination.

¶ 55 The State also argues that the burden on the prosecution of having to do a separate hearing outweighs any benefits to the defendant, and that, in any event, the State met its constitutional burden at the initial appearances. We first note that if the State believes the evidence presented at the initial appearances, in this case the Form 4, was sufficient to satisfy its burden, it is free to simply rely on that evidence at any subsequent hearing.[5] We also note that

---

4. At oral argument the State also argued that *Simpson* applied the wrong standard and we should instead apply the procedural due process test announced in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Mathews* applied due process in the context of a civil administrative proceeding. The Arizona Supreme Court, however, has declined to extend *Mathews* to questions of criminal process. *State*

*v. Wagner,* 194 Ariz. 310, 313, ¶ 15, 982 P.2d 270, 273 (1999).

5. The State asserts that although no court reporter is present at initial appearances, initial appearance proceedings are recorded and the recordings are available to the court, prosecution, and defense counsel.

the requirement in the Arizona Rules of Criminal Procedure that an initial appearance must be followed in short order by a preliminary hearing or grand jury proceeding reflects a recognition that the initial appearance does not include the procedural safeguards ordinarily required to justify an extended deprivation of liberty. This recognition applies equally to the no-bail determination. Finally, just as defendants may waive a preliminary hearing, defendants may waive a hearing on the no-bail determination. Consequently, we cannot speculate on how often the prosecution will actually have to conduct full bail hearings.

## CONCLUSION

¶ 56 Tovar and Segura each requested a hearing on the no-bail determination. Once they did so, they were entitled to a full hearing at which the State had the burden of proof and they had the right to counsel and the right to cross-examine witnesses and offer evidence.

CONCURRING: SHELDON H. WEISBERG, and PATRICIA K. NORRIS, JJ.

