Hillsborough-southern judicial district
No. 2010-439

THE STATE OF NEW HAMPSHIRE

v.

COREY FURGAL

Argued: September 15, 2010
Opinion Issued: November 24, 2010

*Michael A. Delaney*, attorney general (*Michael S. Lewis*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Corey Furgal, appeals an order of the Superior Court (*Groff*, J.) finding RSA 597:1-c (Supp. 2009) constitutional on its face and denying the defendant's request for bail. We affirm.

The following facts are relevant to the disposition of this case. In the early morning hours of November 1, 2009, Christopher Vydfol was stabbed to death in Merrimack. Several witnesses identified the defendant as the

assailant, and the grand jury subsequently indicted him on alternative counts of second degree murder. The State requested that he be held without bail while awaiting trial in accordance with RSA 597:1-c.

The defendant argued that the statute denied him due process because it bars the court from considering any facts other than those related to the strength of the State's evidence of guilt and that, alternatively, if the statute is constitutional, the State must demonstrate his guilt beyond a reasonable doubt to deny bail pending trial. The trial court disagreed, ruling that the statute "narrowly focuses on a particularly acute problem in which the Government interests are overwhelming," and that flight risk and danger-ousness are inherently considered in the "proof is evident" analysis. The trial court also ruled that once the State sustained its burden under the statute, the burden would shift to the defendant to rebut the State's case, and that the court could then consider the defendant's risk of flight or dangerousness before holding him without bail. Finally, the trial court ruled that the State must prove by clear and convincing evidence that the defendant will be convicted of an offense that carries a potential life sentence in order to deny bail under the statute and found that the State had sustained its burden in this case. This appeal followed.

In New Hampshire, the general rule regarding pretrial release is that "all persons arrested for an offense shall be eligible to be released pending judicial proceedings." RSA 597:1 (2001). Except for certain categories of arrestees, the release of a defendant pending trial is governed by RSA 597:2, I(a) and (b) (Supp. 2009).

Under RSA 597:2, I(a) the court must release the defendant on personal recognizance or upon execution of an unsecured appearance bond with additional non-monetary conditions including that the defendant not com-mit a crime during the period of his release and "such further condition or combination of conditions that the court may require." RSA 597:2, II (Supp. 2009) (provisions governing release under RSA 597:2, I(a)). To deny release under RSA 597:2, I(a), the court must determine that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of the person or of any other person or the commu-nity." RSA 597:2, II.

Only if the court makes that determination can it consider the conditions, including monetary conditions, authorized by RSA 597:2, I(b) and the provisions governing such release in RSA 597:2, III (Supp. 2009). The latter section authorizes the court to consider monetary conditions including "bail . . . with sufficient sureties or by deposit of moneys equal to the amount of bail." RSA 597:2, III(b)(2).

RSA 597:1-c, which is the subject of this appeal, is an exception to the general rule that all persons are eligible to be released pending trial. It

provides that if a person has been charged with a crime punishable by life in prison and the State can show that "the proof is evident or the presumption great" that the defendant will be convicted, the defendant must be held without bail pending trial. RSA 597:1-c. Unlike bail provisions in some states that give the court discretion in denying bail, *see, e.g.*, MICH. CONST. art. I, § 15 ("bail may be denied . . . when the proof is evident or the presumption great"), RSA 597:1-c leaves the court with no discretion where the proof is evident or the presumption great. In such cases, a person "*shall not* be allowed bail." (Emphasis added.)

On appeal, the defendant argues that RSA 597:1-c violates his due process rights because it limits the court's consideration of individual factors such as flight risk or dangerousness. He further contends that the trial court erred in finding that the statute shifts the burden to the defendant after the State meets its initial burden. Finally, he argues that the State must prove beyond a reasonable doubt that the defendant will be convicted of an offense that carries a potential life sentence, rather than by clear and convincing evidence.

■ The defendant has mounted a facial challenge to RSA 597:1-c. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). To analyze his facial challenge, we first must determine how the statute is to be construed and then whether that construction can withstand a facial challenge.

"We review a trial court's interpretation of a statute *de novo.*" *State v. Lamy*, 158 N.H. 511, 515 (2009). "We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole." *Id.* "We begin by examining the language of the statute and ascribe the plain and ordinary meaning to the words used." *Id.* (citations omitted). "We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language that the legislature did not see fit to include." *Id.* "We also interpret a statute in the context of the overall statutory scheme and not in isolation. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *State v. Jennings*, 159 N.H. 1, 3 (2009) (quotation and ellipses omitted). "[I]n reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds." *State v. Gubitosi*, 157 N.H. 720, 727 (2008).

■ RSA 597:1-c provides that "[a]ny person arrested for an offense punishable by up to life in prison, where the proof is evident or the

presumption great, shall not be allowed bail." Since in this state defendants are ordinarily entitled to bail prior to trial, it is the State that must bear the burden under the statute. *See Martinez v. Superior Court, In & For County of Pima*, 548 P.2d 1198, 1199 (Ariz. Ct. App. 1976). Furthermore, "the State is in a position superior to that of the accused to produce evidence during a hearing because it already will have presented evidence in the process of charging the person. Otherwise, placing the burden on the accused is, in effect, forcing him to prove a negative." *Simpson v. Owens*, 85 P.3d 478, 487 (Ariz. Ct. App. 2004) (quotations and brackets omitted).

The plain language of the statute thus requires the State to show first that the person is charged with an offense punishable by up to life in prison and then show that the proof is evident or the presumption great. Nothing in the language of the statute permits the court to consider factors such as flight risk or dangerousness, and we will not "add language that the legislature did not see fit to include." *Lamy*, 158 N.H. at 515. The "proof is evident" analysis focuses solely upon the strength of the evidence against a defendant charged with a crime punishable by life in prison. *See Simpson*, 85 P.3d at 494 (plain language of bail statute using identical "proof is evident" phrase does not require that a risk of flight or recidivism be considered before bail is denied and the court will not rewrite the language of the provisions).

Additionally, contrary to the trial court's order, the plain language of the statute does not shift the burden of proof to the defendant once the State establishes that the proof is evident or the presumption great. The plain language of the statute provides that once the State meets its burden, the defendant "shall not be allowed bail." RSA 597:1-c.

We thus conclude that the plain language of RSA 597:1-c does not permit the trial court to consider factors such as flight risk or dangerousness. Accordingly, we turn to whether, as construed, the statute violates due process. We begin our analysis with a brief review of bail in the Anglo-American legal system.

Bail emerged in medieval England as an effort to "implement the promise of the famous 39th chapter of Magna Carta that 'no freeman shall be arrested, or detained in prison unless by the law of the land.' " Foote, *The Coming Constitutional Crisis In Bail: I*, 113 U. PA. L. REV. 959, 965-66 (1965) (ellipses omitted). Subsequently, several significant developments in English law established the framework for what would later become American bail procedures. The Statute of Westminster of 1275 delineated which crimes would be bailable and which crimes would not. D. FREED & P. WALD, BAIL IN THE UNITED STATES: 1964 1 (1964). The

Petition of Right of 1628 established that no man could be imprisoned without being informed of the charges against him and thus ensured that a determination would be made as to whether a defendant had the right to release on bail. Foote, *supra* at 966-68. The Petition was a response to several high profile cases involving defendants held indefinitely without ever being informed of the charges against them. *Id.* at 966. The Habeas Corpus Act of 1679 provided a mechanism for defendants to obtain release on bailable offenses when the King's bench judges refused to admit defendants to bail even when required by statute. *Id.* at 967. Finally, the English Bill of Rights of 1689 provided protection against judicial abuse through the excessive bail clause. *Id.* at 968.

While the development of bail procedures in England tended to favor the granting of bail, an exception was made for those accused of crimes that carried a severe sentence. Blackstone noted that once arrested, a prisoner must:

> either be committed to prison, or give bail: that is, put in securities for his appearance, to answer the charge against him. This commitment, therefore, being only for safe custody, wherever bail will answer the same intention, it ought to be taken; as in most of the inferior crimes; but in felonies, and other offences of a capital nature, no bail can be a security equivalent to the actual custody of the person. For what is there that a man may not be induced to forfeit to save his own life? and what satisfaction or indemnity is it to the public, to seize the effects of them who have bailed a murderer, if the murderer himself be suffered to escape with impunity?
>
> . . . .
>
> [W]here the imprisonment is only for safe custody *before* the conviction, and not for punishment *afterwards*, in such cases bail is ousted or taken away, wherever the offence is of a very enormous nature: for then the public is entitled to demand nothing less than the highest security that can be given, *viz.*, the body of the accused; in order to insure that justice shall be done upon him, if guilty. Such persons, therefore, . . . have no other sureties but the four walls of the prison.

W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 1001-02 (George Chase 4th ed., The Banks Law Publishing Co. 1914) (1765-69).

The influence of the English bail jurisprudence first appeared in the American colonies as part of the Massachusetts Body of Liberties of 1641,

which would serve as the model for the development of the bail system in the colonies. Liberty 18 provided that:

> No mans person shall be restrained or imprisoned by any Authority whatsoever, before the law hath sentenced him thereto, If he can put in sufficient securitie, bayle or mainprise, for his appearance, and good behaviour in the meane time, unlesse it be in Crimes Capital, and Contempts in open Court, and in such cases where some expresse act of Court doth allow it.

W. WITMORE, A BIBLIOGRAHICAL SKETCH OF THE LAWS OF THE MASSACHUSETTS COLONY FROM 1630 TO 1686 37 (1890).

The "Crimes Capital" exception eventually evolved into a statute that first appeared in the Frame of Government of Pennsylvania in 1682, which provided: "That all prisoners shall be bailable by sufficient sureties, unless for capital offences, where the proof is evident, or the presumption great." F. THORPE, 5 AMERICAN CHARTERS CONSTITUTIONS AND ORGANIC LAWS 3061 (1906). Comparable language first appeared in New Hampshire in *State v. McNab*, 20 N.H. 160, 163-64 (1849), where we quoted approvingly the rule that "judges will, in general, exercise [the power to bail] in favor of a prisoner in every case not capital, and in capital cases where there is any circumstance to induce the court to suppose he may be innocent, and in every case where the charge is not alleged with sufficient certainty." In 1867, the New Hampshire General Statutes codified this rule, providing that "[a]ll prisoners arrested for crime shall, before conviction, be bailable by sufficient sureties, except for capital offences where the proof is evident or the presumption great." GS 240, § 18 (1867). Approximately forty states now have constitutional bail provisions containing similar language. *See* Note, *What the Right Hand Gives: Prohibitive Interpretations of the State Constitutional Right to Bail*, 78 FORDHAM L. REV. 267, 283-84 (2009).

It is against this historical backdrop that we turn to the defendant's argument that RSA 597:1-c violates both the New Hampshire and United States Constitutions. We first address the defendant's due process arguments under the State Constitution, citing federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231-33 (1983).

■ "[T]he Due Process Clause protects individuals against two types of government action. So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Salerno*, 481 U.S. at 746 (quotations and citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process

scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." *Id.* (citation omitted).

The defendant first argues that RSA 597:1-c violates substantive due process rights because it does not permit the trial court to consider a defendant's risk of flight or dangerousness when deciding whether to deny bail. The defendant relies upon *Salerno*, in which the defendants brought a facial challenge to the Bail Reform Act of 1984, arguing that it violated both the Due Process Clause and the Excessive Bail Clause of the Federal Constitution. *Id.* at 746. The statute required the Government to show by clear and convincing evidence that the defendant posed a substantial risk to the community if he were released, and, based upon such a finding, allowed the court to deny bail. *Id.* at 742. The Court held that the Government's interest in community safety, combined with the procedural protections provided in the statute, outweighed the defendant's liberty interest, and accordingly upheld the statute against the defendant's facial challenge. *Id.* at 748, 751-52.

The defendant asserts that *Salerno* stands for the proposition that in order to pass constitutional muster, a statute that permits a defendant to be held without bail is constitutional only if it expressly requires the court to consider whether the individual defendant poses a danger to the community. The defendant conflates sufficient conditions with necessary ones. We do not read *Salerno* to hold that all statutory bail schemes must include an individualized inquiry into a defendant's dangerousness in order to pass constitutional muster. Rather than setting a minimum threshold for all bail inquiries, the Court in *Salerno* was confronted with one specific bail scheme and decided only the narrow issue of whether that particular scheme could survive constitutional scrutiny. The court did not hold that to be constitutional a statute that permits detention without bail must require that the individual defendant's dangerousness be taken into account.

The defendant also contends that, to satisfy due process, a trial court must consider the defendant's individual flight risk before denying bail. Historically, the purpose of bail was to ensure the defendant's presence at trial and to ensure that he would submit to punishment if convicted. *See Ex parte Milburn*, 34 U.S. 704, 709 (1835) ("A recognisance of bail, in a criminal case, is taken to secure the due attendance of the party accused, to answer the indictment, and to submit to a trial, and the judgment of the Court thereon."). There is a clear relation between a defendant's risk of flight and the amount of bail necessary to ensure his presence at trial. *See Application of Corbo*, 149 A.2d 828, 834 (N.J. Super. Ct. App. Div.) ("where the probabilities of flight are overwhelming, there should be no bail"

(quotation omitted)), *cert. denied*, 149 A.2d 859 (N.J. 1959). However, the defendant does not cite and we have not discovered any precedent that requires a court to consider the specific circumstances of each defendant's risk of flight before denying bail. To the contrary, as explained above, from the beginning of the bail system, an exception to the rule favoring bail was made for persons accused of serious crimes that focused the inquiry solely on the evidence of the defendant's guilt. *See, e.g.*, WHITMORE, *supra* at 37. Given this long history of bail permitting courts in a narrow category of cases to focus exclusively upon the evidence of the defendant's guilt, the individualized inquiry for which the defendant argues cannot be said to be "implicit in the concept of ordered liberty." *See, e.g.*, THORPE, *supra* at 3061.

While a specific inquiry into the individual factors in each case is not required by the constitution, we agree with the trial court that both risk of flight and dangerousness are inherent in the "proof is evident" analysis. Historically, persons charged with crimes carrying a severe sentence were denied bail because the flight risk associated with such punishment allowed for no set of conditions that could assure the defendant's presence at trial. *See* BLACKSTONE, *supra* at 1001-02. The denial of bail in this state is limited to the most serious offenses. The legislature has made a reasoned determination that when "the proof is evident or the presumption great," the risk to the community becomes significantly compelling, thus justifying the denial of bail. *See Salerno*, 481 U.S. at 748 ("We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest.").

Our conclusion that RSA 597:1-c passes constitutional muster is buttressed by the fact that, as noted in *Salerno*, detention without bail is strictly limited in duration. In *Salerno*, the Court made note that pretrial detention was limited by "the stringent time limitations of the Speedy Trial Act." *Id.* at 747. In this state, pretrial detention is limited by the superior court's speedy trial policy. *See* SUPER. CT. R. Appendix (Superior Court Speedy Trial Policy) ("Where the defendant is incarcerated, every case pending without disposition after 4 months from date of entry or indictment shall be scheduled forthwith for a show cause hearing as to whether, under the principles of *Barker v. Wingo*, the case should be dismissed for lack of a speedy trial." (citation omitted)). We note that while the federal Speedy Trial Act provides statutorily enforceable rights, *see* 18 U.S.C. §§ 3161-3162 (2006), the superior court speedy trial policy creates guidelines for the trial courts.

The defendant next contends that the trial court erred in determining the standard of proof under RSA 597:1-c. The trial court ruled that the

State must show that the proof is evident or the presumption great by clear and convincing evidence. The defendant argues that the statute requires that the State's burden must be "beyond a reasonable doubt," and, alternatively, that if the statute does not permit a flight or dangerousness inquiry, the *Salerno* decision demands that the State be held to the reasonable doubt standard. The State argues that the burden imposed by the statute has an independent meaning that roughly equates with "clear proof."

We begin by determining the standard of proof imposed by the statute. In deciding the burden of proof required by the "proof is evident" standard, courts in other states have reached a variety of conclusions ranging from "a fair likelihood of conviction" to a standard that is more stringent than beyond a reasonable doubt. *See Simpson*, 85 P.3d at 488. The standards can be divided into three categories: (1) those requiring a variation of probable cause or fair likelihood that the accused committed the crime; (2) those requiring a variation of clear and convincing evidence that the accused committed the crime; and (3) those requiring a variation of evidence beyond a reasonable doubt that the accused committed the crime. *See id.* We adopt the second standard of proof and require that the State show that the proof is evident or the presumption great by clear and convincing evidence.

We reject the cases requiring mere probable cause because "if [the statute] were to be read in such a manner, the guarantee would add nothing to the accused's rights, since a suspect may not be held without a showing of probable cause in any instance." *Id.* at 489 (quotation omitted). We likewise reject the cases that require proof beyond a reasonable doubt. "The greatest burden of proof should be put on the State to convict the accused." *Id.* at 490. "That degree of proof is reserved for trial and is not what the writers of our [statute] had in mind in providing for bail." *Id.* at 489 (quotation omitted). Indeed, the bail statute replaced the common law rule from *McNab*, which allowed for the denial of bail in capital cases only if there were no "circumstances to induce the court to suppose [the accused] may be innocent." *McNab*, 20 N.H. at 163 (quotation omitted). The legislature was well familiar with the beyond a reasonable doubt standard and could have used the appropriate language had it intended for such a standard to be imposed. *See State v. Bartlett*, 43 N.H. 224 (1861) (discussing use of the "beyond a reasonable doubt" standard). "Not only is it highly improbable that the [legislature] intended the bail hearing to determine the precise question to be answered at the trial itself, but such duplication obviously wastes judicial resources . . . ." *Simpson*, 85 P.3d at 489 (quotation omitted).

As the Arizona Court of Appeals in *Simpson* noted, "[t]he history of the phrase alone suggests that it is unique and that it establishes its own standard since there is no comparison for recourse." *Id.* at 487. After examining other state cases and the history of the phrase, the court concluded: "The State's burden is met if all of the evidence, fully considered by the court, makes it plain and clear to the understanding, and satisfactory and apparent to the well-guarded, dispassionate judgment of the court that the accused committed one of the offenses enumerated in [the statute]." *Id.* at 491. While we are generally persuaded by the *Simpson* court's overall burden of proof analysis, to adopt an independent standard like that used in Arizona would serve only to create greater confusion among the trial courts in making bail determinations. "The best way to avoid the arbitrary and unequal application of the law is to use a definition of 'proof is evident or the presumption great' that is easy to understand and apply." *Id.* at 497 (Foreman, J., concurring). We conclude that the clear and convincing evidence standard is the standard for determining whether or not the State has shown that the proof is evident or the presumption great. *See* 8 C.J.S. *Bail* § 28 (2005) (Proof is evident "means clear, strong evidence, which leads to a dispassionate conclusion that the offense has been committed as charged" while presumption great means "the circumstances are such that the inference of guilt naturally to be drawn from them is strong, clear, and convincing"); *see also, e.g., Brill v. Gurich*, 965 P.2d 404, 408 (Okla. Crim. App. 1998) ("the court must determine by clear and convincing evidence if 'the proof of guilt is evident, or the presumption thereof is great'"); *Application of Haynes*, 619 P.2d 632, 636 (Or. 1980) ("While for this purpose guilt need not be shown 'beyond a reasonable doubt,' as it must for conviction, the evidence should at least be clear and convincing.").

Alternatively, the defendant argues that if the court is not permitted to make a flight or dangerousness inquiry, the decision in *Salerno* supports the conclusion that RSA 597:1-c violates due process. The defendant contends that the only way to remedy the defective statute would be to hold the State to the reasonable doubt standard. As discussed above, we do not read *Salerno* to hold that all statutory bail schemes must include an individualized inquiry into a defendant's dangerousness or flight risk in order to comport with due process. Because we reject the defendant's contention that RSA 597:1-c is constitutionally defective, we see no reason to impose a greater burden than is required by the statute.

Finally, we briefly address the issue of the procedural protections required by the statute. The defendant states that courts in other jurisdictions have reasoned that all or most of the federal Bail Reform Act's procedural protections cited in *Salerno* are minimum requirements of

procedural due process. *See Simpson,* 85 P.3d at 491 ("Courts that have incorporated the *Salerno* analysis have adopted all or most of [the procedural protections provided in the Bail Reform Act] as minimum requirements of procedural due process."). The defendant's brief focuses his procedural argument upon the standard of proof required and which party must bear the burden, and does not directly address other procedural protections that would be required at a bail hearing. Because this issue was not sufficiently briefed, we do not decide the specific procedural protections required at a bail hearing under RSA 597:1-c other than to say that at a minimum the defendant has a right to counsel at such a hearing. *See Rothgery v. Gillespie County, Tex.,* 128 S. Ct. 2578, 2592 (2008) ("[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel."); *cf. Stapleford v. Perrin,* 122 N.H. 1083, 1088 (1982) (finding that a significant liberty interest exists when commitment may be the sanction, requiring due process protections including representation by counsel).

Because the Federal Constitution does not provide any greater protection than does the State Constitution with regard to the defendant's due process claims, we reach the same result under the Federal Constitution. *See In re Shelby R.,* 148 N.H. 237, 239 (2002); *cf. Salerno,* 481 U.S. at 752.

*Affirmed.*

DALIANIS, HICKS and CONBOY, JJ., concurred.