# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2020-0365, <u>State of New Hampshire v. Nicholas Murphy</u>, the court on December 8, 2020, issued the following order:**

Having considered the memoranda on the bail issue filed in response to our order of October 6, 2020, together with the record on appeal and the parties' oral arguments, we affirm the decision of the Superior Court (<u>O'Neill</u>, J.) denying the defendant's request for bail pending trial.

The defendant, Nicholas Murphy, was charged with second degree murder, which is punishable by up to life in prison. <u>See</u> RSA 630:1-b, II (2016). Pursuant to RSA 597:1-c (Supp. 2019), "[a]ny person arrested for an offense punishable by up to life in prison, where the proof is evident or the presumption great, shall not be allowed bail." "The 'proof is evident' analysis focuses solely upon the strength of the evidence against a defendant charged with a crime punishable by life in prison." <u>State v. Furgal</u>, 161 N.H. 206, 211 (2010). "Since in this state defendants are ordinarily entitled to bail prior to trial, it is the State that must bear the burden under the statute." <u>Id</u>. The State must show that the proof is evident or the presumption great by clear and convincing evidence. <u>Id</u>. at 217; <u>see also</u> <u>Black's Law Dictionary</u> 698 (11th ed. 2019) (defining "clear and convincing evidence" as "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain"). Following an evidentiary hearing, the trial court denied the defendant's bail request, finding that the State demonstrated by clear and convincing evidence that the proof against him is evident. We will affirm the trial court's findings unless they are unsupported by the record or are clearly erroneous. <u>State v. De La Cruz</u>, 158 N.H. 564, 569 (2009).

The sole witness to testify at the bail hearing was the State's lead investigator, who testified as follows. The victim lived with her husband in a mobile home in a trailer park. Their son, the defendant, lived in a shed on the same property. The victim and her husband typically did not lock the door to their home, and the defendant regularly entered it throughout the day.

On March 16, 2020, the victim drove her husband to work at approximately 7:00 a.m. and returned home at approximately 7:45 a.m. The husband returned home from work at approximately 4:20 p.m., and found the victim's body on the living room floor. Serology evidence showed that the victim had been fatally attacked where her body was found. She died from severe trauma to her head and a deep laceration to her neck. There were no

signs of struggle.  There was no evidence of sexual assault or theft.  The medical examiner estimated that the victim had been killed between 8:20 a.m. and 12:20 p.m.  The defendant told his sister that he did not enter the parents' home that morning.  However, the police found a cigarette rolling machine in the defendant's shed that belonged to the victim's husband, who informed the police that he had used the device that very morning before leaving for work.  The defendant later told the police that he may have entered the parents' home for food.

The victim and her husband were not known to have had any disputes with their neighbors.  No one other than the victim, her husband, and the defendant, was observed on the victim's property that morning.

When the police arrived at the scene, they spoke first with the husband, and then with the defendant, who was in his shed.  The defendant appeared to be highly intoxicated and was not wearing a shirt.  Inside the shed, the police found an open package for a razor blade knife, but they did not find the knife.  The defendant purchased the knife four months earlier with his debit card.  Approximately 120 feet from the shed, the police found a hatchet in the woods.  The hatchet had the victim's blood on it but no fingerprints or DNA evidence other than the victim's blood.  Members of the victim's family told the police that they had seen the defendant use a similar hatchet to chop wood.  The hatchet's handle was wrapped in black electrical tape.  Members of the victim's family told the police that the defendant commonly used black electrical tape to repair items around his shed.

The defendant and the victim were known to have had a strained relationship stemming, at least in part, from the defendant's mental illness.  He referred to his mother as the devil and believed that he could hear her voice in his head.  When he entered his parents' home, he would wear headphones "to block out the voices."  The defendant was verbally abusive toward his mother, and she was afraid of him.  Approximately one month before she was killed, she attempted unsuccessfully to have him involuntarily committed.

The defendant argues that there was no direct evidence that he was the assailant, and that his mental illness does not mean that he was violent.  The State counters that the defendant had the motive, opportunity, and means to commit the crime.  Although the evidence that the defendant was the assailant was circumstantial, and there was no evidence that he had previously been physically violent, we conclude that the evidence was sufficient to support the trial court's finding that the proof against him is evident.  See State v. De La Cruz, 158 N.H. at 569.  Further commentary on the weight or nature of the evidence would, in our view, be improvident, as the case has yet to be tried, and we wish to avoid influencing that proceeding by a more elaborate and public assessment of the evidence.  See Fry v. State, 990 N.E.2d 429, 450 (Ind.

2

2013). Accordingly, we affirm the trial court's decision denying bail. See <u>State v. Furgal</u>, 161 N.H. at 210 (Under RSA 597:1-c, when proof is evident, "a person <u>shall</u> <u>not</u> be allowed bail.").

<u>Affirmed</u>.


HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**