THOMAS, J., dissenting

# SUPREME COURT OF THE UNITED STATES

COUNTY OF MARICOPA, ARIZONA, ET AL. *v.*
ANGEL LOPEZ-VALENZUELA, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 14–825.　Decided June 1, 2015

The petition for a writ of certiorari is denied. JUSTICE ALITO dissents.

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting from denial of certiorari.

The Court's refusal to hear this case shows insufficient respect to the State of Arizona, its voters, and its Constitution. And it suggests to the lower courts that they have free rein to strike down state laws on the basis of dubious constitutional analysis. I respectfully dissent.

In 2006, Arizona voters amended their State Constitution to render ineligible for bail those individuals charged with "serious felony offenses" who have "entered or remained in the United States illegally and if the proof is evident or the presumption great as to the present charge." Ariz. Const., Art. II, §22(A)(4). A divided en banc panel of the U. S. Court of Appeals for the Ninth Circuit held this provision unconstitutional under two theories based on the "substantive component of the Due Process Clause." *Lopez-Valenzuela* v. *Arpaio*, 770 F. 3d 772, 775 (2014). It first reasoned that the amendment implicates a fundamental interest "'in liberty'" and is not narrowly tailored to serve Arizona's interest in ensuring that persons accused of crimes are available for trial. *Id.,* at 780–786. Second, the court held that the amendment "violate[s] substantive due process by imposing punishment before trial." *Id.,* at 791.

Shortly after that decision, Arizona sought a stay of the

judgment from this Court. In a statement respecting denial of the stay application, I noted the unfortunate reality that there "appeare[d] to be no reasonable probability that four Justices [would] consider the issue sufficiently meritorious to grant certiorari." *Maricopa County* v. *Lopez-Valenzuela*, 574 U. S. ___ (2014) (slip op., at 1) (internal quotation marks omitted). Though I had hoped my prediction would prove wrong, today's denial confirms that there was "little reason to be optimistic." *Id.,* at ___ (slip op., at 2).

It is disheartening that there are not four Members of this Court who would even review the decision below. As I previously explained, States deserve our careful consideration when lower courts invalidate their constitutional provisions. *Id.,* at ___ (slip op., at 1). After all, that is the approach we take when lower courts hold federal statutes unconstitutional. See, *e.g., Department of Transportation* v. *Association of American Railroads*, 573 U. S. ___ (2014) (granting review when a federal statutory provision was held unconstitutional, notwithstanding absence of a circuit split). In fact, Congress historically required this Court to review any decision of a federal court of appeals holding that a state statute violated the Federal Constitution. 28 U. S. C. §1254(2) (1982 ed.). It was not until 1988 that Congress eliminated that mandatory jurisdiction and gave this Court discretion to review such cases by writ of certiorari. See Pub. Law 100-352, §2, 102 Stat. 662. In my view, that discretion should be exercised with a strong dose of respect for state laws. In exercising that discretion, we should show at least as much respect for state laws as we show for federal laws.

Our indifference to cases such as this one will only embolden the lower courts to reject state laws on questionable constitutional grounds. This Court once emphasized the need for judicial restraint when asked to review the constitutionality of state laws. See, *e.g., Ferguson* v.

*Skrupa,* 372 U. S. 726, 729 (1963) (noting that this Court should refuse to use the Due Process Clause "to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy"); *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379, 391 (1937) (refusing to strike down a state regulation on the basis of substantive due process because "the Constitution does not recognize an absolute and uncontrollable liberty"); *Nebbia* v. *New York*, 291 U. S. 502, 537–538 (1934) ("Times without number we have said that the legislature is primarily the judge of the necessity of [a regulation], that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power"); *Tyson & Brother* v. *Banton*, 273 U. S. 418, 446 (1927) (Holmes, J., dissenting) ("[A] state legislature can do whatever it sees fit to do unless it is restrained by some express prohibition in the Constitution . . . , and that Courts should be careful not to extend such prohibitions beyond their obvious meaning by reading into them conceptions of public policy that the particular Court may happen to entertain").  But for reasons that escape me, state statutes have encountered closer scrutiny under the Due Process Clause of the Fourteenth Amendment than federal statutes have under the sister Clause in the Fifth Amendment. *Davidson* v. *New Orleans*, 96 U. S. 97, 103–104 (1878) (declining to overturn a state tax assessment on due process grounds, and noting the "remarkable" fact that the Fifth Amendment Due Process Clause had been invoked very rarely since the founding, but that in the short time since the Fourteenth Amendment had been ratified, "the docket [had become] crowded with cases in which [the Court was] asked to hold that State courts and State legislatures have deprived their own citizens of life, liberty, or property without due process of law").  This Court's previous admonitions are all too rare today, and

our steadfast refusal to review decisions straying from them only undercuts their influence.

For these reasons, I respectfully dissent from the Court's denial of certiorari.