377 P.3d 1003

Jason Donald SIMPSON, a.k.a. Jason Donald Simpson, Sr., Petitioner,

v.

The Honorable Phemonia MILLER, Commissioner of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Commissioner,

State of Arizona, Real Party in Interest.

Joe Paul Martinez, Petitioner,

v.

The Honorable Roland J. Steinle, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

State of Arizona, Real Party in Interest.

Nos. 1 CA–SA 15–0292, 1 CA–SA 15–0295 (Consolidated)

Court of Appeals of Arizona, Division 1.

FILED 6/14/2016

Gallagher & Kennedy, P.A., Phoenix, By Woodrow C. Thompson, Hannah H. Porter, Co-counsel for Petitioner Jason Donald Simpson

Quarles & Brady LLP, Phoenix, By Hector J. Diaz, James L. Burke, Co-counsel for Petitioner Jason Donald Simpson

Perkins Coie LLP, Phoenix, By Jean-Jacques Cabou, Sarah R. Gonski, Co-counsel for Petitioner Joe Paul Martinez

Law Offices of Brian F. Russo, Phoenix, By Brian F. Russo, Co-counsel for Petitioner Joe Paul Martinez

Maricopa County Attorney's Office, Phoenix, By David R. Cole, Arthur Hazelton, Susan L. Luder, Counsel for Real Party in Interest

Judge Peter B. Swann delivered the opinion of the court, in which Presiding Judge Kenton D. Jones joined. Judge Andrew W. Gould dissented.

## OPINION

SWANN, Judge:

¶ 1 These special actions require us to determine the constitutional minimum requirements for bail hearings when a statute makes certain serious offenses nonbailable. The petitioners were each charged with sexual conduct with a minor under the age of 15 and were denied bail under A.R.S. § 13–3961(A)(3). We do not hold that the petitioners were entitled to bail, but that they were entitled to hearings at which the judges could consider whether any release conditions could protect the victims and the community.

¶ 2 In *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Supreme Court upheld a federal statute that required denial of bail for certain categories of serious felonies because the government was first required to prove by clear and convincing evidence that no release conditions "will reasonably assure ... the safety of any other person and the community." 18 U.S.C. § 3142(e). Consistent with *Salerno*, A.R.S. § 13–3961(D) provides that persons charged with terrorism or any dangerous crime against children may be denied bail when the state demonstrates that the person likely committed the offense and "no condition or combination of conditions of release may be imposed that will reasonably assure the safety of the other person or the community." By contrast, A.R.S. § 13–3961(A)(3) provides that persons charged with sexual conduct with a minor under the age of 15 must be denied bail upon nothing more than a sufficient showing that they likely committed the offense—*without* addressing the availability of release conditions that could assure the safety of victims and the community.

¶ 3 Because the categorical rule established by § 13–3961(A)(3) requires denial of bail without considering whether any release conditions could ensure victim and community safety, it is facially unconstitutional under *Salerno*.

## FACTS AND PROCEDURAL HISTORY

¶ 4 The petitioners in this consolidated special action were (in unrelated cases) arrested and indicted on numerous charges, including sexual conduct with minors under the age of 15, class 2 felonies under A.R.S. § 13–1405(B) and dangerous crimes against children under A.R.S. § 13–705(P)(1)(e). Petitioner Martinez is being held without bond as he awaits trial, on the ground that he is ineligible for bail under A.R.S. § 13–3961(A)(3) and the corresponding Ariz. Const. art. II, § 22(A)(1). Petitioner Simpson was likewise held without bond for a period. But during the pendency of these special actions, the superior court granted his motion to amend release conditions and author-

ized a $5 million bond with restrictions designed to protect his victims.

¶ 5 The superior court rejected the petitioners' facial due-process challenges to the bail provisions. The petitioners renew those challenges on special action. The Arizona Attorney General, the Speaker of the House of Representatives, and the President of the Arizona Senate were given an opportunity to participate in this matter, *see* A.R.S. § 12–1841, but did not do so.

## JURISDICTION

¶ 6 We accept special-action jurisdiction because the petitioners have no adequate remedy by appeal.[1] *See* Ariz. R.P. Spec. Act. 1(a). "Issues involving pretrial incarceration and release conditions become moot once a trial is conducted and any appeal can be filed." *Costa v. Mackey*, 227 Ariz. 565, 569, ¶ 6, 261 P.3d 449 (App.2011). Further, the petitions present a novel question of law that is of statewide importance and is likely to recur. *See Chartone, Inc. v. Bernini*, 207 Ariz. 162, 165–66, ¶¶ 7–8, 83 P.3d 1103 (App. 2004); *Welch–Doden v. Roberts*, 202 Ariz. 201, 204, ¶ 10, 42 P.3d 1166 (App.2002).

## STANDARD OF REVIEW

¶ 7 As an initial matter, we observe that while successful facial challenges are difficult to mount, *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095, they "are not categorically barred or especially disfavored," *City of Los Angeles v. Patel*, —— U.S. ——, 135 S.Ct. 2443, 2449, 192 L.Ed.2d 435 (2015). "Under the most exacting standard the [Supreme] Court has prescribed for facial challenges, a plaintiff must establish that a law is unconstitutional in all of its applications." *Id.* (citation omitted). "The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id.* (citation omitted). Indeed, *Salerno* itself involved a facial challenge that the Court considered on its merits—had the hearing requirements at issue there been constitutionally inadequate, the facial challenge would have succeeded be-

cause they would have been inadequate in every case. That is the case here.

¶ 8 We must ask whether the nature of the hearing authorized by A.R.S. § 13–3961(A)(3) denies due process to those facing a bail determination. If *no* person charged with the offense can receive the constitutionally required hearing, then the statute is unconstitutional in every case. Bail can constitutionally be denied. The question is whether § 13–3961(A)(3) does so in a manner consistent with due process.

## DISCUSSION

¶ 9 Ariz. Const. art. II, § 22(A), provides that "all persons charged with crime shall be bailable by sufficient sureties," with certain enumerated exceptions. And no person may be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Ariz. Const. art. II, § 4. Exceptions to the Arizona Constitution's general rule that bail will be available must therefore satisfy the due process requirements of the United States Constitution. *See Salerno*, 481 U.S. at 750–51, 107 S.Ct. 2095.

¶ 10 A.R.S. § 13–3961(A)(3) provides: "A person who is in custody shall not be admitted to bail if the proof is evident or the presumption great that the person is guilty of the offense charged and the offense charged is ... [s]exual conduct with a minor who is under fifteen years of age." We have examined § 13–3961(A) before. *See Simpson v. Owens ("Simpson I")*, 207 Ariz. 261, 269, ¶¶ 23–25, 85 P.3d 478 (App.2004). *Simpson I* addressed the burden and elements of proof necessary for a finding that the "proof is evident or the presumption great." *Id.* at 270–74, ¶¶ 26–40, 85 P.3d 478. But while we recognized in *Simpson I* that no consideration of risk-manageability is required as a matter of Arizona law, we were not asked to consider whether the absence of such an inquiry violates due process. We do not disturb the holding of *Simpson I*—it remains the governing law for the hearing required by § 13–3961(D).

¶ 11 Our analysis is governed by *Salerno*. In *Salerno*, the Supreme Court held that the

---

1. Simpson's bond does not deprive us of jurisdiction. *See Hernandez v. Lynch*, 216 Ariz. 469, 471, ¶ 6, 167 P.3d 1264 (App.2007). His criminal case is still pending, and if changed circumstances

result in revocation of his bond, he will be entitled to a hearing under A.R.S. § 13–3961(D) by virtue of our decision today.

Bail Reform Act of 1984 comported with due process, 481 U.S. at 741, 747–52, 107 S.Ct. 2095, but cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the *carefully limited exception.*" *Id.* at 755, 107 S.Ct. 2095 (emphasis added). Concluding that the Act "narrowly focused on a particularly acute problem in which the Government interests are overwhelming," the Court emphasized three important aspects of the legislation: (1) it applied only to those arrested for a specific group of extremely serious offenses, a category of persons that Congress specifically found to be far more likely to commit dangerous acts in the community post-arrest; (2) it required the government to demonstrate probable cause that the person committed the charged offense; *and* (3) it required the government to demonstrate by clear and convincing evidence, in a "full-blown adversary hearing," that "*no conditions of release can reasonably assure the safety of the community or any person.*" *Id.* at 750, 107 S.Ct. 2095 (emphasis added).

¶ 12 The three factors, *in toto,* that led the Supreme Court to uphold the Bail Reform Act were essential to its reasoning and to the result. The Court wrote that the Act was not

a scattershot attempt to incapacitate those who are merely suspected of these serious crimes. The Government must first of all demonstrate probable cause to believe that the charged crime has been committed by the arrestee, *but that is not enough.* In a full-blown adversary hearing, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person. 18 U.S.C. § 3142(f). While the Government's general interest in preventing crime is compelling, even this interest is heightened when the Government musters

convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community. *Under these narrow circumstances, society's interest in crime prevention is at its greatest . . . .*

When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat.

*Id.* (emphases added). The Court's reference to "these narrow circumstances" and the need for proof beyond probable cause to believe the arrestee committed the crime was neither careless nor accidental; we understand the Court's reliance on this proof to have been essential to the result in *Salerno. See also Demore v. Kim,* 538 U.S. 510, 549, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (Souter, J. concurring in part, dissenting in part) ("In deciding in *Salerno* that this principle did not categorically bar pretrial detention of criminal defendants without bail under the Bail Reform Act of 1984, it was *crucial* that the statute provided that, '[i]n a full-blown adversary hearing, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person.'" (emphasis added)).[2] Our legislature properly included this "crucial" provision for terrorism cases and all cases involving dangerous crimes against children—it is no less crucial here.

¶ 13 Our dissenting colleague argues that *Salerno* does not hold that all the safeguards for liberty present there are constitutionally necessary, and conflates the first two prongs of *Salerno* with the third. *See infra* ¶¶39–42, 30–33. But *Salerno* did not even suggest that fewer than all of the safeguards in the Bail Reform Act might be allowable.[3] We have no

---

**2.** *See also Hernandez,* 216 Ariz. at 476, ¶ 21, 167 P.3d 1264 ("In *Salerno,* for example, the United States Supreme Court upheld the federal Bail Reform Act of 1984, which permitted, among other things, 'a federal court to detain an arrestee pending trial if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions "will reasonably assure ... the safety of any other

person and the community." ' ") (citation omitted).

**3.** The dissent cites *Simpson I* for the proposition that this court has already held that not all the elements required by *Salerno* are required for the denial of bail. *See infra* ¶42. But the discussion in *Simpson I* upon which the dissent relies relates only to the procedural safeguards in the Bail Reform Act, not its substantive requirements.

quarrel with the notion that a person shown likely to have committed sexual conduct with a minor under the age of 15 can be presumed to be a dangerous individual—the offense is unquestionably both grave and loathsome. And we agree Arizona law appropriately affords the defendant adequate due process with respect to the determination of the probability of guilt. *Segura v. Cunanan*, 219 Ariz. 228, 234–35, ¶¶ 25–30, 196 P.3d 831 (App.2008). But the guilt inquiry fails to address the issue raised by the third prong of *Salerno*. The *Salerno* requirement that the court examine whether the defendant's dangerousness is manageable must have meaning. *See Foucha v. Louisiana*, 504 U.S. 71, 81–82, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (holding that "[u]nlike the sharply focused scheme at issue in *Salerno* ... [the state statute at issue wa]s not carefully limited" because it placed no burden on the government to prove that an insanity acquittee who was no longer mentally ill should nonetheless continue to be indefinitely detained in order to protect the community).

¶ 14 A.R.S. § 13–3961(D) (and subsection (G), which gives the court discretion to presume that a defendant is unmanageably dangerous if he or she is a criminal street gang member) complies with the third requirement of *Salerno*.[4] The court still has the duty to consider the propriety of setting bail for the dangerous individual on a case-by-case basis but retains the authority to deny bail altogether if the facts warrant. By contrast, § 13–3961(A) and Ariz. Const. art. II, § 22(A) require the court to turn a blind eye

to the individual facts and automatically deny bail in *every* case based on proof of likely guilt of a capital offense, sexual assault, sexual conduct with a minor under the age of 15, molestation of a child under the age of 15, a serious felony when there is probable cause to believe that the defendant entered or remained in the country illegally,[5] or any felony when the defendant was already on bail for a separate felony charge. The dissent points out that the court may receive evidence relevant to the question whether the defendant's dangerousness could be managed by release conditions but neglects the reality that it cannot *consider* that evidence in the context of setting bail; bail is simply unavailable under any circumstance once the *Simpson I* showing has been made. The dissent's reference to the defendant's ability to present evidence and cross-examine witnesses, *see infra* ¶32, is empty for purposes of the third *Salerno* factor, and the inquiry does not at all "[i]n practice ... address[ ] the same factors in determining dangerousness as a traditional bond hearing," *infra* ¶49, n. 15. Procedural due process is merely ornamental if the court cannot consider the evidence it produces. And under subsection (A), the court's hands are tied based on probable guilt alone—it is prohibited from considering whether release conditions might manage the threat posed by the individual.

■ ¶ 15 We conclude that the absence of the third *Salerno* factor is constitutionally fatal. "Neither *Salerno* nor any other case authorizes detaining someone in jail while

This is not surprising, because *Simpson I* was concerned with the procedure for establishing the necessary evidence of guilt. Before today, this court simply has not addressed the need for compliance with each substantive element of *Salerno* as a constitutional minimum. Indeed, the only case to hold that the factors in *Salerno* are nonexclusive in the 29 years since that case was decided is *State v. Furgal*, 161 N.H. 206, 13 A.3d 272, 279 (N.H. 2010). We respectfully disagree with that court's reading of *Salerno*.

4. The statute provides:

Except as provided in subsection A of this section, a person who is in custody shall not be admitted to bail if the person is charged with a felony offense and the state certifies by motion and the court finds after a hearing on the matter that there is clear and convincing evi-

dence that the person charged poses a substantial danger to another person or the community or engaged in conduct constituting a violent offense, *that no condition or combination of conditions of release may be imposed that will reasonably assure the safety of the other person or the community* and that the proof is evident or the presumption great that the person committed the offense for which the person is charged. For the purposes of this subsection, "violent offense" means either of the following:
  1. *A dangerous crime against children.*
  2. Terrorism.
(Emphases added.)

5. The Ninth Circuit recently held this exception unconstitutional. *Lopez–Valenzuela v. Arpaio*, 770 F.3d 772, 786 (9th Cir.2014) (en banc), *cert. denied* —— U.S. ——, 135 S.Ct. 2046, 192 L.Ed.2d 177 (2015).

awaiting trial, or the imposition of special bail conditions, based merely on the fact of arrest for a particular crime. To the contrary, *Salerno* ... upheld the constitutionality of a bail system where pretrial defendants could be detained *only* if the need to detain them was demonstrated on an individualized basis." [6] *Lopez–Valenzuela v. Arpaio*, 770 F.3d 772, 785 (9th Cir.2014) (quoting *United States v. Scott*, 450 F.3d 863, 864 (9th Cir. 2006)) (emphasis added). In general, bail may be denied only when it would not reasonably effect its own goals: a felony defendant is ineligible for bail "*if* [he or she] poses a substantial danger to any other person or to the community, *if* no conditions of release which may be imposed will reasonably assure the safety of the other person or the community *and if* the proof is evident or the presumption great as to the present charge." Ariz. Const. art. II, § 22(A)(3) (emphases added); *see also* A.R.S. § 13–3961(D).

¶ 16 We recognize that "[i]t has generally been thought ... that capital offenses may be made categorically nonbailable because 'most defendants facing a possible death penalty would likely flee regardless of what bail was set.'" *Lopez–Valenzuela*, 770 F.3d at 786 (citation omitted); *see also Salerno*, 481 U.S. at 753, 107 S.Ct. 2095; *Simpson I*, 207 Ariz. at 267, ¶ 18, 85 P.3d 478. Consequently, a categorical exception to bail for capital offenses is common in state constitutions nationwide.[7] Further, some state constitutions have extended the categorical capital-offense exception to create categorical exceptions for non-capital offenses that bear a similarity to capital offenses in terms of historical origin or severity of punishment: Maine has categorically prohibited bail for crimes denominated as capital offenses since the constitution's adoption [8]; Indiana, Michigan, Nebraska, and Oregon for murder and treason; Nevada for murders punishable by life imprisonment; and Florida, Illinois, Pennsylvania, Rhode Island, and Vermont for offenses punishable by life imprisonment. Me. Const. art. I, § 10; Ind. Const. art. I, § 17; Mich. Const. art. I, § 15; Neb. Const. art. I, § 9; Or. Const. art. I, § 14; Nev. Const. art. I, § 7; Fla. Const. art. I, § 14; Ill. Const. art. I, § 9; Penn. Const. art. I, § 14; R.I. Const. art. I, § 9; Vt. Const. ch. II, § 40.

¶ 17 It is questionable, however, whether even those capital and similar exceptions are truly "categorical." *See Salerno*, 481 U.S. at 765 n. 6, 107 S.Ct. 2095 (Marshall, J., dissenting) ("If in any particular case the presumed likelihood of flight [for a capital offense] should be made irrebuttable, it would in all probability violate the Due Process Clause. Thus what the majority perceives as an exception is nothing more than an example of the traditional operation of our system of bail."); *see also* Lindermayer, 78 Fordham L. Rev. at 290–98 (summarizing eleven states' case law interpreting even seemingly categorical bail exceptions as not foreclosing judicial discretion). At the least, the character

---

**6.** The dissent's reliance on *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), is unavailing. *See infra* ¶36. *Demore* expressly applied a less stringent constitutional analysis because the bail-denial scheme at issue related to the federal regulation of immigration. *Id.* at 521, 123 S.Ct. 1708 ("'In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.'" (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976))).

**7.** *See* Ala. Const. art. I, § 16; Alaska Const. art. I, § 11; Ariz. Const. art. II, § 22(A)(1); Ark. Const. art. II, § 8; Cal. Const. art. I, § 12; Colo. Const. art. II, § 19; Conn. Const. art. I, § 8; Del. Const. art. I, § 12; Fla. Const. art. I, § 14; Idaho Const. art. I, § 6; Ill. Const. art. I, § 9; Iowa Const. art. I, § 12; Kans. Const. Bill of Rights § 9; Ky. Const. Bill of Rights § 16; La. Const. art. I, § 18; Me. Const. art. I, § 10; Minn. Const. art. I, § 7; Miss. Const. art. III, § 29; Mo. Const. art. I, § 20; Mont. Const. art. II, § 21; Nev. Const. art. I, § 7; N.J. Const. art. I, ¶ 11; N.M. Const. art. II, § 13; N.D. Const. art. I, § 11; Ohio Const. art. I, § 9; Okla. Const. art. II, § 8; Penn. Const. art. I, § 14; S.D. Const. art. VI, § 8; Tenn. Const. art. I, § 15; Utah Const. art. I, § 8; Vt. Const. ch. II, § 40; Wash. Const. art. I, § 20; Wyo. Const. art. I, § 14. The categorical capital-offense exception has deep historical roots, *see* Ariana Lindermayer, *What the Right Hand Gives: Prohibitive Interpretations of the State Constitutional Right to Bail*, 78 Fordham L. Rev. 267, 274–75 (2009), and has existed in the Arizona Constitution since statehood, Ariz. Const. art. II, § 22 (1912).

**8.** The dissent makes much of the fact that capital offenses were historically broadly defined. *See infra* ¶34. But Maine is the only state whose constitution retains that historical definition in its bail provision. Me. Const. art. I, § 10.

and constitutionality of categorical capital and similar exceptions is an open issue. But we do not decide that broad issue today. And we do not, as the dissent does, assume that they set a constitutional benchmark from which other exceptions can be justified.[9] *See infra* ¶¶33–35.

¶ 18 Arizona's categorical bail exceptions are almost unique. Only one other state constitution is similar—Nebraska's constitution categorically prohibits bail for certain sexual offenses. Neb. Const. art. I, § 9. It therefore is not surprising that the question presented by this case is one of first impression.[10]

¶ 19 In *Simpson I*, we noted that "Arizona law does not require that a risk of flight or a risk of recidivism be considered before bail is denied." 207 Ariz. at 277, ¶ 49, 85 P.3d 478. Though that statement was correct as a matter of state law, we did not consider whether the absence of a hearing on the issue of danger manageability satisfied due process. This is not, as the dissent claims, a narrow or limited view of *Simpson I*'s holding. *See infra* ¶41. It is a full and accurate one. *Simpson I* addressed whether § 13–3961(A) comports with the second prong of *Salerno*. It did not consider whether the statute com-

plies with the third prong of *Salerno*. The dissent's reliance on *Segura v. Cunanan*, 219 Ariz. 228, 196 P.3d 831 (App.2008), is similarly inapposite. *See infra* ¶43. Like *Simpson*, *Segura* addressed only the second prong of *Salerno*. Finally, in *State v. Rayes*, we held that "[u]nlike the situation in *Hunt*, [Ariz. Const. art. II, § 22(A)(1) and A.R.S. § 13–3961(A)(3)] do not create an irrebuttable presumption that a person charged with a listed offense will be denied bail. . . . Instead, the amendments require that if the State wants a defendant . . . to be held without bail, it must convince the judge, at a hearing, that the opportunity for bail is limited by proving that the proof is evident or the presumption of guilt is great." 206 Ariz. 58, 61, ¶ 11, 75 P.3d 148 (App.2003). But significantly, *Rayes* misconstrued the Nebraska provision—Nebraska does in fact include a quantum-of-proof limitation identical to that set forth in the Arizona provisions. *See Hunt*, 648 F.2d at 1151 (quoting Neb. Const. art. I, § 9); *see also* 4 Wayne R. LaFave et al., *Criminal Procedure*, § 12.3(e), at n.121 (noting the incorrect assumption underlying the analysis in *Rayes*). And *Rayes* did not address *Salerno* at all.

9. *Lopez–Valenzuela* left open the possibility that non-capital offenses could be subject to valid categorical restrictions on bail: "at minimum, to survive heightened scrutiny any such categorical rule, requiring pretrial detention in all cases without an individualized determination of flight risk or dangerousness, would have to be carefully limited." 770 F.3d at 786. Though *Lopez–Valenzuela* identified no eligible non-capital offense, it noted that "[t]he state's chosen classification would have to serve as a convincing proxy for unmanageable flight risk or dangerousness." *Id.* The dissent expresses the view that the likelihood of severe punishment is a proxy for these facts. *See infra* ¶31 & n. 14. If that were the law, there would be nothing to stop the broad erosion of bail for literally dozens of crimes in Arizona that carry penalties akin to life imprisonment.

10. In a decision later vacated on procedural grounds, the Eighth Circuit held in *Hunt v. Roth* that the categorical sex-offender exception set forth in Nebraska's constitution was unconstitutional under the Eighth Amendment. 648 F.2d 1148, 1165 (8th Cir.1981), *vacated as moot sub nom Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). The court held that "[i]n noncapital crimes without balancing at least the individual factors of the particular case there exists[, as compared to capital crimes,] no equally strong compulsion to conclude that an

accused will not appear for trial." *Id.* at 1160. The court explained that proof of guilt alone "bears little relevance to the factors ordinarily used to determine whether bail should be granted or denied in an individual case." *Id.* at 1162. The court concluded: "The fatal flaw in the Nebraska constitutional amendment is that the state has created an irrebuttable presumption that every individual charged with this particular offense is incapable of assuring his appearance by conditioning it upon reasonable bail or is too dangerous to be granted release. The constitutional protections involved in the grant of pretrial release by bail are too fundamental to foreclose by arbitrary state decree. The state may be free to consider the nature of the charge and the degree of proof in granting or denying bail but it cannot give these factors conclusive force." *Id.* at 1165.

Because it has been vacated, we do not, as the dissent implies, rely on *Hunt* in reaching our decision. *See infra* ¶¶44–45. This case presents a novel issue that we resolve based on *Salerno*. The dissent also chides us for "fail[ing] to mention" that the Nebraska provision was upheld in *Parker v. Roth*, 202 Neb. 850, 278 N.W.2d 106 (1979). *See infra* ¶44. Because that case was decided years before *Salerno*, we consider it unworthy of mention.

¶ 20 We cannot say that § 13–3961(A)(3) and the corresponding portion of Ariz. Const. art. II, § 22(A)(1), create the required "carefully limited" or "narrowly focuse[d]" exception to the general rule of bail.[11] *See Salerno,* 481 U.S. at 755, 750, 107 S.Ct. 2095. Sexual conduct with a young minor is unquestionably a serious offense that involves a vulnerable class of victims and severe penalties. But it cannot serve, in every case, as a reliable proxy for unmanageable flight risk, witness intimidation, unmanageable risk to victims or any other plausible bail consideration. *See Augustus v. Roemer,* 771 F.Supp. 1458, 1466 (E.D.La.1991). Take, for example, the young teenaged defendant who engaged in mutual sexual conduct with her not-quite-15-year-old boyfriend—a circumstance not difficult to imagine. Under § 13–3961(A)(3), she would be nonbailable without consideration as to whether her threat to the community or risk of flight could be remediated by release conditions.

■ ¶ 21 And even in more starkly predatory cases, not every defendant—even if likely guilty as charged—necessarily poses an unmanageable danger to others or the judicial process before trial. To conflate the repugnancy of the offense with the questions that inform bail decisions would open wide the door to the automatic denial of bail for all serious, or violent, or sexual offenses, or all offenses involving a vulnerable victim—a result that would only serve to eviscerate constitutional due process rights.[12] To hold otherwise would be to conflate the severity of the potential punishment with the individualized, non-punitive considerations that inform pretrial bail decisions.

¶ 22 We do not hold that the court may not deny bail for one accused of sexual conduct with a minor under the age of 15, or that the court may not presume that such a person is dangerous. We hold only that the court must consider whether the danger posed by the defendant could, in the particular case, be managed by bail and release conditions—just as is the case for those accused of terrorism and other dangerous crimes against children. Due process requires that the petitioners be afforded the complete protections prescribed by *Salerno.*

## CONCLUSION

¶ 23 We accept jurisdiction and grant relief. A.R.S. § 13–3961(A)(3) and the corresponding portion of Ariz. Const. art. II, § 22(A)(1), violate the due process protections of the United States Constitution. Because the petitioners are charged with dangerous crimes against children, their bail-entitlement hearings should have been governed by A.R.S. § 13–3961(D).[13]

GOULD, J., dissenting:

¶ 24 Arizona's procedure for denying bail has one sole purpose: protecting children

11. The dissent brands Arizona's scheme as "offense-based," and argues that such an approach is inherently narrowly tailored. *See, e.g., infra* ¶¶29–31. The argument fails, however, because the Bail Reform Act was also "offense-based," and it is quite clear that the mere designation of offenses was not enough to make the Act constitutional. Its other substantive elements were necessary to the Court's decision.

12. Though it might be tempting to suggest that there is little harm in denying bail to those who have been shown likely to be convicted of particularly abhorrent crimes (and therefore will likely face substantial sentences), the denial of bail as a form of pretrial punishment is flatly prohibited as a matter of due process. Until convicted, all defendants stand innocent before the law. "It is axiomatic that '[d]ue process requires that a pretrial detainee not be punished.'" *Schall v. Martin,* 467 U.S. 253, 269, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (quoting *Bell v. Wolfish,* 441 U.S. 520, 535, n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Instead, bail (or the denial of bail) must be aimed at assuring the accused's appearance, protecting against witness intimidation, and protecting victim and public safety. Ariz. Const. art. II, § 22(B); A.R.S. § 13–3961(B). We assume that A.R.S. § 13–3961(A)(3) and the corresponding portion of Ariz. Const. art. II, § 22(A), were enacted for a regulatory (and not punitive) purpose and that they serve a legitimate and compelling state interest. *See Simpson I,* 207 Ariz. at 269, ¶¶ 23–25, 85 P.3d 478 (App.2004). We decide only whether due process requires an *inquiry* into the efficacy of potential release conditions before a person is denied bail for sexual conduct with a minor under the age of 15.

13. The dissent objects that we spend "a great deal of time ... discussing" A.R.S. § 13–3961(D). *See infra* ¶28. We merely point out that it applies to the petitioners in the absence of A.R.S. § 13–3961(A)(3) and that it contains all three elements required by *Salerno.*

from persons charged with serious sex crimes. This same procedure has been used for over 200 years to protect the community from persons accused of committing dangerous, violent offenses. I do not agree with the majority's conclusion that Arizona's procedure is facially unconstitutional under the Due Process Clause of the United States or Arizona Constitutions; therefore, I dissent. U.S. Const. amend. V; Ariz. Const. art. 2, § 4.

¶ 25 It bears repeating that in the context of bail, a defendant's Due Process right to liberty is not absolute. *United States v. Salerno,* 481 U.S. 739, 748–50, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952); *Simpson v. Owens ("Simpson I"),* 207 Ariz. 261, 267, 269, ¶¶ 17, 25, 85 P.3d 478 (App.2004). Protecting liberty is important, but it is also important for the government to protect the lives and safety of its citizens. *Salerno,* 481 U.S. at 755, 107 S.Ct. 2095. Thus, the "government's interest in preventing crime by arrestees" may, "in appropriate circumstances, outweigh an individual's liberty interest." *Id.* at 748, 749, 107 S.Ct. 2095.

¶ 26 Here, petitioners carry a heavy burden to show the challenged provisions are facially unconstitutional. Petitioners must show that "no set of circumstances exists under which the [provisions] would be valid." *Id.* at 745, 107 S.Ct. 2095; *Lisa K. v. Ariz. Dep't of Econ. Sec.,* 230 Ariz. 173, 177, ¶ 8, 281 P.3d 1041 (App.2012). Thus, the possibility Arizona's procedure for denying bail "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [it] wholly invalid." *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095.

¶ 27 The strict limitations placed on a facial validity challenge are based on the principal of judicial restraint: a court must be careful in striking down statutes with respect to factual applications that are not before it. *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449–50, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). This rule was in place before *Salerno,* and has been reaffirmed many times since. *See City of Chicago v. Morales,* 527 U.S. 41, 78, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (Scalia, J., dissenting); *see also Wash. State Grange,* 552 U.S. at

449–50, 128 S.Ct. 1184; *Anderson v. Edwards,* 514 U.S. 143, 155, n.6, 115 S.Ct. 1291, 131 L.Ed.2d 178 (1995); *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (stating that a statute is invalid on its face if "it is unconstitutional in every conceivable application").

¶ 28 The question presented in this case is whether the procedure for denying bail set forth in Article 2, Section 22(A)(1) of the Arizona Constitution and A.R.S. § 13–3961(A)(3) is constitutional. Although the majority devotes a great deal of time to discussing § 13–3961(D), neither party has challenged or raised that statute in their briefs. This is not surprising, since § 13–3961(D) provides for different bail procedures than § 13–3961(A)(3), and, despite some overlap, applies to different crimes. *See* A.R.S. § 13–3961(D). Thus, I leave the construction of § 13–3961(D) for another day, and focus on the provisions at issue here.

¶ 29 The express purpose of Article 2, Section 22(A)(1) and § 13–3961(A)(3) is to protect victims and the community. Ariz. Const. art. 2, § 22 ("The purposes of bail and any conditions of release that are set by a judicial officer include ... [p]rotecting the safety of the victim, any other person or the community."); A.R.S. § 13–3961(B)(3) (same). As the majority concedes, this purpose is regulatory, not punitive. *Salerno,* 481 U.S. at 746–47, 107 S.Ct. 2095. The real issue is whether these provisions are narrowly tailored to achieve this important, compelling purpose. *Id.*

¶ 30 Arizona's procedure is based on the presumption that defendants who commit a very narrow category of serious offenses pose a danger to the community. Thus, in *Simpson I* we held that by denying bail to defendants who commit sexual conduct with children under 15, "the Arizona Legislature and voters have ... weighed 'the gravity of the nature of the offense in order to sustain a denial of a fundamental right,'" and limited denial of bail "to crimes that involve inherent and continuing risks if bail were granted." *Simpson I,* 207 Ariz. at 269, ¶ 25, 85 P.3d 478 (quoting *Scott v. Ryan,* 548 P.2d 235, 236 (Utah 1976)). This offense-based procedure is based on the same rationale underlying the

1984 Bail Reform Act, which "operates only on individuals who have been arrested for a specific category of extremely serious offenses," and presumes that individuals charged with such crimes "are far more likely to be responsible for dangerous acts in the community after arrest." *Salerno*, 481 U.S. at 750, 107 S.Ct. 2095; *see State v. Furgal*, 161 N.H. 206, 13 A.3d 272, 279 (2010) (stating New Hampshire's no bond procedure is limited to the "most serious offenses"; the procedure reflects the fact "[t]he legislature has made a reasoned determination that when 'the proof is evident or the presumption great,' the risk to the community becomes significantly compelling, thus justifying the denial of bail.").

¶ 31 Arizona's offense-based procedure has two components. First, it applies to defendants charged with extremely serious crimes. Ariz. Const. art. 2, § 22(A)(1); A.R.S. § 13-3961(A)(3); *see Simpson I*, 207 Ariz. at 269, ¶¶ 23-25, 85 P.3d 478. Here, Petitioners are charged with committing sexual conduct with a child under the age of 15. A.R.S. § 13-1405(A), (B). This crime involves an adult having sexual intercourse or oral sexual contact with the penis, vulva or anus of a child. A.R.S. § 13-1401(A)(1), (4). The danger posed by individuals who commit this crime is underscored by its severe punishment; if convicted, a defendant essentially faces a mandatory sentence of life imprisonment.[14]

¶ 32 The second component of Arizona's procedure requires the court to hold an evidentiary hearing to determine whether the "proof is evident, or presumption great" the defendant committed "one of the offenses enumerated in A.R.S. § 13-3961(A)." *Simpson I*, 207 Ariz. at 274, ¶ 40, 85 P.3d 478; *see also Segura v. Cunanan*, 219 Ariz. 228, 235, ¶ 27, 196 P.3d 831 (App.2008). Thus, in cases involving sexual conduct with a minor, the trial court must hold a hearing to determine whether, based on the nature and weight of the evidence, the defendant had sexual intercourse or oral sexual contact with

a child. *Simpson I*, 207 Ariz. at 274, ¶ 40, 85 P.3d 478. During the hearing, the defendant has the right to be represented by counsel, cross-examine witnesses, present evidence, and testify in his defense. *Segura*, 219 Ariz. at 234-35, ¶¶ 26-30, 196 P.3d 831; *Simpson I*, 207 Ariz. at 270, 275-76, ¶¶ 27, 44-48, 85 P.3d 478.

¶ 33 There is nothing novel or new about Arizona's offense-based approach to denying bail. As the majority notes, thirty-three states use the same offense-based approach for capital offenses. *See, supra*, at ¶16 n. 7. This procedure has been in place for capital crimes since colonial times, and has been employed by Arizona since statehood. *Simpson I*, 207 Ariz. 267-68, nn. 6 & 7, ¶¶ 18-21, 85 P.3d 478; *see Segura*, 219 Ariz. at 234, ¶ 24, 196 P.3d 831; *see also Salerno*, 481 U.S. at 753, 107 S.Ct. 2095 ("A court may, for example, refuse bail in capital cases."); *Carlson*, 342 U.S. at 545-46, 72 S.Ct. 525 (discussing denial of bail for capital offenses); *Furgal*, 13 A.3d at 277-78, 279 (same). The rationale justifying this approach for capital crimes is, in part, the same as the rationale underlying Arizona's provision for the crime of sexual conduct with a child: based on the "gravity" of the offense, it is reasonable to presume such crimes "involve inherent and continuing risks if bail were granted." *Simpson I*, 207 Ariz. at 269, ¶ 25, 85 P.3d 478; *see Salerno*, 481 U.S. at 750, 107 S.Ct. 2095.

¶ 34 This offense-based approach to bail has not been limited to murder. Historically, non-bailable capital offenses included a broad range of serious crimes. *See Simpson I*, 207 Ariz. at 267-68, ¶ 19 n. 8, 85 P.3d 478; Arizona Code Annotated, art. 3, §§ 43-4205, -4810, -4811, -5701 (1939) (listing train robbery, derailing or wrecking a train, treason, and procuring the conviction and death of another based on perjury as capital offenses). Rape, including rape of a child, was histori-

---

14. Sexual conduct with a minor under the age of 15 is classified as a "dangerous crime against children," and for each act and each victim, a defendant faces a mandatory, flat time presumptive prison term of 20 years; the minimum prison sentence is 13 years, and the maximum prison sentence is 27 years. A.R.S. § 13-705(C), (H),

(P)(1)(c). Each count must be served consecutively, and at the completion of a prison sentence a defendant faces potential commitment to the Arizona State Hospital as a sexually violent person for an indefinite period of time. A.R.S. § 13-705(M); A.R.S. § 36-3701, *et. seq.*

cally a non-bailable capital offense. *Simpson I*, 207 Ariz. at 268 n. 8, 85 P.3d 478.

¶ 35 Additionally, several states currently employ an offense-based procedure for non-capital offenses where conviction carries a severe punishment. *See* Penn. Const. art. 1, § 14 (no bond for crimes where maximum punishment is life imprisonment and the proof is evident or the presumption great); Ill. Const. art. 1, § 9 (same); *see also* Or. Const. art. 1, § 14 (murder and treason are non-bailable offenses where the "proof is evident, or the presumption strong"); *Furgal*, 13 A.3d at 279–80 (holding that New Hampshire statute denying bail for crime of second degree murder, which is punishable by life in prison, does not violate due process). In addition, both Nebraska and Arizona use this procedure for certain sex offenses. *See* Neb. Const., art. 1, § 9 (categorically excepts from bail "sexual offenses involving penetration by force or against the will of the victim").

¶ 36 In *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), the Supreme Court upheld an offense-based approach for deportation removal proceedings involving an undocumented immigrant who had been convicted of an "aggravated felony." 538 U.S. at 517–18, 123 S.Ct. 1708; *see* 8 U.S.C. § 1226(c). In *Kim*, the defendant argued the statute violated due process because the denial of bail was based solely on the fact he committed an aggravated felony, and did not permit an individualized determination of whether he posed a flight risk or danger to the community. 538 U.S. at 514, 123 S.Ct. 1708. The Supreme Court employed a rational basis test rather than strict scrutiny, recognizing that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 521, 123 S.Ct. 1708 (internal citations omitted). However, the Court also stated "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523, 123 S.Ct. 1708 (internal citations omitted). Thus, with the principles of due process squarely in mind, *Kim* held that denying bail based solely on the category of the offense did not violate due process. *Id.*

¶ 37 In short, Arizona's offense-based procedure falls within a well-established framework that has been used throughout the United States for many years. *Furgal*, 13 A.3d at 279; *Cf. Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (stating due process "protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition' ") (internal citations omitted). Like many other states, Arizona has enacted a procedure for denying bail where there is strong evidence a defendant has committed a dangerous, violent offense.

¶ 38 The majority argues, however, that Arizona's offense-based procedure violates the due process protections mandated by the Supreme Court in *Salerno*. I disagree. The primary issue addressed in *Salerno* was whether the Due Process Clause prohibits denial of bail on the grounds of dangerousness. *Salerno*, 481 U.S. at 744, 748–49, 107 S.Ct. 2095. *Salerno* answered this question by holding that because the government has a compelling interest in protecting its citizens, denying bail based on dangerousness does not violate due process. *Id.* at 747–48, 107 S.Ct. 2095.

¶ 39 While *Salerno* does discuss the specific procedures contained in the Bail Reform Act, it does not state that every single one of these procedures is mandated under the Due Process Clause. We certainly did not adopt that position in *Simpson I*, and other courts have not interpreted *Salerno* so broadly. *See Simpson I*, 207 Ariz. at 274–75, ¶ 41, 85 P.3d 478; *see Furgal*, 13 A.3d at 279 ("Rather than setting a minimum threshold for all bail inquiries, the Court in *Salerno* was confronted with one specific bail scheme and decided only the narrow issue of whether that particular scheme could survive constitutional scrutiny."). Rather, *Salerno* simply held that the Act's procedures "suffice to repel a facial [constitutional] challenge." 481 U.S. at 752, 107 S.Ct. 2095.

¶ 40 We recognized the limited scope of *Salerno* in *Simpson I*. After considering the procedures of the Bail Reform Act discussed in *Salerno*, we held that not all of these procedures were necessary "for the Arizona law to comply with procedural due process," and that an individualized determination as

to whether the "accused is a flight risk or a risk to recidivate" was not required. *Simpson I*, 207 Ariz. at 274–75, 277, ¶¶ 41, 49, 85 P.3d 478.

¶ 41 The majority seeks to limit our holding in *Simpson I*. It contends that *Simpson I* only explains Arizona's requirements for a no bond hearing, and that our sole focus was to determine the proper burden of proof for denying bail. The majority, however, reads *Simpson I* too narrowly.

¶ 42 In *Simpson I* we discussed *Salerno* at length, noting that it "addressed both substantive and procedural due process" challenges to the Bail Reform Act. *Simpson I*, 207 Ariz. at 266–67, 269, ¶¶ 16–17, 24, 85 P.3d 478. We addressed the due process considerations in denying bail, including the government's compelling interest in protecting the community and the individual's liberty interest. *Id.*, at 267–69, ¶¶ 17–25, 85 P.3d 478. We also addressed the Bail Reform Act procedures discussed in *Salerno*, stating that "at least *most* of the procedural protections enunciated in *Salerno* [were] necessary for the Arizona law to comply with procedural due process." *Simpson I*, 207 Ariz. at 274–75, ¶ 41, 85 P.3d 478 (emphasis added). Noticeably absent from the procedures we adopted in *Simpson I* are those the majority asserts are required to comply with due process.

¶ 43 If *Simpson I* were not clear enough, in *Segura* we addressed the following question: "the application of the requirements of due process to Arizona's procedures relating to arrest and release of defendants who may not be entitled to bail." *Segura*, 219 Ariz. at 233, ¶ 18, 196 P.3d 831. Once again, we addressed *Salerno* and the due process requirements for a denying bail. *Id.* at 228, 233–34, 238, ¶¶ 1, 18, 25, 44–45, 56, 196 P.3d 831. We noted that *Simpson I* "relied heavily on" *Salerno* in determining "the level of procedure required to hold defendants without bail." *Id.* at 234–35, 238, ¶¶ 25, 45, 196 P.3d 831. Ultimately, we affirmed the procedures outlined in *Simpson I*, holding that these procedures satisfied due process. *Id.* at 230, 238, 241, ¶¶ 1, 44–45, 56, 196 P.3d 831.

¶ 44 The majority notes that *Hunt v. Roth*, 648 F.2d 1148, 1165 (8th Cir.1981) ("*Hunt I*"), *vacated sub nom. Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353

(1982), held that Nebraska's no bond provision for rape is unconstitutional under the Eighth Amendment. *Hunt I*, of course, is not binding precedent; it was vacated by the United States Supreme Court. *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). The majority also fails to mention that in *Parker v. Roth*, 202 Neb. 850, 278 N.W.2d 106 (1979), the Nebraska Supreme Court *upheld* Nebraska's no bond provision on the grounds it did *not* violate the Eighth Amendment. *Id.* at 109.

¶ 45 More importantly, *Hunt I* is not very persuasive authority. *Hunt I* states that Nebraska's provision denying bail violated the Eighth Amendment's prohibition against excessive bail. *Id.* at 1162, 1165. This argument is not even raised by Petitioners in this case, and for good reason: our court has expressly held that Arizona's no bond provision does not violate the Eighth Amendment. *Romley v. Rayes*, 206 Ariz. 58, 62, ¶ 12, 75 P.3d 148 (App.2003). In addition, *Hunt I* is a pre-*Salerno* case that focuses almost exclusively on the government's interest in assuring the presence of a defendant at trial, rather than the state's interest in protecting the community. *Hunt I*, 648 F.2d at 1157, 1160, 1162–64. Whether Arizona's provisions are narrowly tailored to ensure the accused's presence at trial involves a different analysis, and is a question we need not answer in this case. *Cf. Salerno*, 481 U.S. at 754, 107 S.Ct. 2095 (stating that "when Congress has mandated detention on the basis of a compelling interest *other* than prevention of flight ... the Eighth Amendment does not require release on bail") (emphasis added).

¶ 46 The majority relies heavily on *Lopez–Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014), but that case is distinguishable. *Lopez–Valenzuela* dealt with a different provision than the one at issue here; specifically, Article 2, Section 4 of the Arizona Constitution and A.R.S. § 13–3961(A)(5) prohibiting bail for class 1 to class 4 offenders who have entered or remained in the country illegally. *Id.* at 775, 791–92. Section 13–3961(A)(5) was not, however, limited to a specific category of serious offenses; it encompassed a broad range of crimes, including very minor misdemeanor offenses. *Id.* at 784, 791. In addition,

*Lopez–Valenzuela* focused its analysis on whether the provisions at issue were narrowly tailored to prevent flight risk, not dangerousness. *Id.* at 783, 791–92. Finally, the *Lopez–Valenzuela* court noted that the subject provisions appeared to have a punitive purpose, being "motivated at least in significant part by a desire to punish undocumented immigrants for (1) entering and remaining [illegally] in the country . . . and (2) allegedly committing the charged offense." *Id.* at 790. In contrast, there is no question the regulatory purpose here is legitimate and compelling.

¶ 47 In concluding that Arizona's procedure is overbroad, the majority speculates about factual scenarios where the weight of the evidence may show that a defendant committed sexual conduct with a minor, but the specific circumstances of the crime do not show the defendant is dangerous. Thus, the majority concludes, "not every defendant" charged with this crime is in fact dangerous, and therefore the Arizona procedure "cannot serve in every case as a reliable proxy for unmanageable . . . risk."

¶ 48 The flaw in this analysis is that it turns the standard for a facial challenge on its head. To sustain Arizona's provisions against a facial challenge, "we need only find them 'adequate to authorize the pretrial detention of at least some [persons] charged with crimes,' whether or not they might be insufficient in some particular circumstances." *Salerno*, 481 U.S. at 751, 107 S.Ct. 2095 (internal citations omitted). And there are, of course, many cases where an adult who has had sexual intercourse or oral sexual contact with a child poses a danger to the victim or other children in the community. Indeed, we need look no farther than Petitioner Martinez: the trial court determined

the proof is evident or the presumption great that Martinez sexually abused three different children over a period of twenty years. In short, we cannot even say that Arizona's no bond provisions are unconstitutional as to one of the actual litigants before us, much less unconstitutional in every conceivable application. *See Morales*, 527 U.S. at 76–77, 119 S.Ct. 1849 (Scalia, J., dissenting).

¶ 49 As for the majority's characterization of the role of the trial judge in a no bond hearing as "ornamental" and having to "turn a blind eye to the individual facts" of a case, I strongly disagree. In truth, the trial judge's authority to determine whether the proof is evident or the presumption great, with the benefit of a full-blown adversary hearing, is a powerful due process protection.[15] Again, we need look no further than Petitioner Simpson's case. After this special action was filed, he sought and obtained a new bond hearing. At the new hearing the court determined the evidence was insufficient to satisfy the no bond standard; as a result, the court set a bond and release conditions.

¶ 50 The majority argues that it does not decide whether offense-based approaches to bail are constitutional, and that this issue remains an open question. However, one wonders how any offense-based approach can survive a facial challenge under the majority's analysis. Such provisions, which are now in jeopardy, have been in place in America for over 200 years. The majority notes, in passing, that denying bail for capital offenses, and (possibly) other non-capital offenses may be constitutional. Of course, this begs the question of why Arizona's provision violates due process with respect to a defendant who sexually abuses a child.

15. In practice, Arizona's offense-based approach addresses the same factors in determining dangerousness as a traditional bond hearing. A.R.S. § 13–3967(B). For example, one factor that bears on dangerousness at a bond hearing is the nature and circumstances of the offense. A.R.S. § 13–3967(B)(2). Arizona's no bond procedure incorporates this factor into the evidentiary hearing; indeed, it does so far better than the typical bond hearing, where the prosecutor stands up in court and makes avowals about the offense. *See* A.R.S. § 13–3967(H) (evidence offered at a bond hearing "need not conform" to the rules of evidence); Ariz. R. Crim. P. 7.4(c) (same). Another factor, the "weight of evidence against the accused," is clearly considered at a no bond hearing. A.R.S. § 13–3967(B)(6). Apart from the defendant's criminal history, the remaining statutory bond factors have little relevance in assessing a defendant's *dangerousness*; rather, these factors go to whether a defendant is a flight risk. *See* A.R.S. § 13–3967(B)(7) (defendant's family ties, employment, financial resources, character and mental condition); –3967(B) (11) (length of residency in the community); –3967(B) (13) (record of appearance in court). Although the defendant's criminal history is not a factor in a no bond hearing, the absence of this factor does not prejudice a defendant, particularly when he has a criminal history. A.R.S. § 13–3967(B)(3), (12),

¶ 51 I concede that under Arizona's procedure, we will not *always* know if a defendant charged with sexual conduct with a child poses a danger to the victim or the community. In fairness, however, the same can be said of a defendant charged with murder or a capital offense. But it seems to me that if holding a defendant without bond in a capital case or a murder case is constitutional, and has been for over 200 years, then doing so when a child is the victim of a serious sex crime is as well. Exercising restraint, as we must when considering a facial challenge, I would find Arizona's provisions for denying bail constitutional.